**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASETERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| OWENS & MINOR, INC. and OWENS & MINOR FLEXIBLE BENEFITS PLAN,<br><br>        Plaintiff,<br><br>  v.<br><br>ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>        Defendant. | Civil Action No.: 3:23-cv-00115-REP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................4

      A.    The Parties. .............................................................................................. 4

      B.    Anthem's Services. .................................................................................. 4

      C.    Proprietary Systems, Methodologies, and Contracting Strategy. ............... 5

      D.    Data Reports and Claims Audits. ............................................................. 6

      E.    Plaintiff's Data Requests. ........................................................................ 8

      F.    Plaintiff's Lawsuit. ................................................................................. 9

LEGAL STANDARD...............................................................................................................9

ARGUMENT..........................................................................................................................10

    I.    Plaintiff fails to state a claim for violation of ERISA (Count I)...........................10

      A.    Plaintiff fails to allege any conduct that violates ERISA Section 724. ......11

      B.    Plaintiff fails to allege that purported requirements for claims data reports violate any ERISA fiduciary duties. ...............................................13

      C.    Plaintiff's prohibited transaction claim is wholly speculative....................16

    II.    Plaintiff lacks standing because it fails to plausibly allege any harm caused by Anthem's conduct (All Counts). ...........................................................................18

      A.    Plaintiff's speculation that Anthem's failure to disclose claims data may have concealed mismanagement or self-dealing cannot confer standing. ...............................................................................................18

      B.    Plaintiff's allegation that Anthem's failure to disclose claims data free of contractual requirements frustrated its ERISA monitoring duties cannot confer standing....................................................................19

    III.    Each of Plaintiff's state law causes of action fails to state a claim.......................22

      A.    Plaintiff fails to state a claim for breach of contract..................................22

      B.    Plaintiff fails to state a claim for breach of good faith and fair dealing. ...25

      C.    Plaintiff fails to state a claim for breach of fiduciary duty. .......................26

CONCLUSION.......................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)............................................................................................19

*Am. Hosp. Ass'n v. Azar*,
    468 F. Supp. 3d 372 (D.D.C. 2020) ....................................................................6

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
    579 F. Supp. 3d 1133 (N.D. Cal. 2022) .............................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................10, 17

*Augusta Mut. Ins. Co. v. Mason*,
    645 S.E.2d 290 (Va. 2007)...........................................................................26, 27

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ..............................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................9, 10, 18

*Hamlet v. Hayes*,
    641 S.E.2d 115 (Va. 2007)..................................................................................24

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................19

*Coleman v. Nationwide Life Ins. Co.*,
    969 F.2d 54 (4th Cir. 1992) ................................................................................10

*Coyne & Delany Co. v. Blue Cross & Blue Shield*,
    102 F.3d 712 (4th Cir. 1996) ..............................................................................13

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) ................................................................16, 19, 20

*DiFelice v. Fiduciary Counselors, Inc.*,
    398 F. Supp. 2d 453 (E.D. Va. 2005) .................................................................15

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)............................................................................................23

*Ehlmann v. Kaiser Found. Health Plan*,
    198 F.3d 552 (5th Cir. 2000) ...........................................................13

*Faircloth v. Lundy Packing Co.*,
    91 F.3d 648 (4th Cir. 1996) ...........................................................14

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...................................................................9, 13

*Filak v. George*,
    594 S.E.2d 610 (Va. 2004)...............................................................26

*Hershberger v. Bank of Am., N.A.*,
    No. CL 130270, 2013 WL 12237927 (Va. Cir. Ct. Sept. 13, 2013) ..................25, 26

*Holland v. Consol Energy, Inc.*,
    781 F. App'x 209 (4th Cir. 2019) .......................................................21

*HotJobs.com, Ltd. v. Digital City, Inc.*,
    No. 164237, 2000 WL 33333529 (Va. Cir. Ct. Mar. 8, 2000).........................23, 25

*Int'l Union v. Consol Energy, Inc.*,
    465 F. Supp. 3d 556 (S.D. W. Va. 2020) .................................................19

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)......................................................................11

*LMP Holdings, LLC v. PLY Enterprises, LLC*,
    No. 12-CV-440, 2012 WL 4344302 (E.D. Va. Sept. 21, 2012) ..................23, 24, 25

*MCR Fed., LLC v. JB&A, Inc.*,
    808 S.E.2d 186 (Va. 2017)...............................................................27

*Navar, Inc. v. Fed. Bus. Council*,
    784 S.E.2d 296 (Va. 2016)...............................................................22

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*,
    983 F.3d 671 (4th Cir. 2020) ...........................................................10

*Perez v. Cenlar, Cent. Loan Admin. & Reporting*,
    No. CL19-10130, 2022 WL 18360345 (Va. Cir. Ct. Apr. 19, 2022)................25, 26

*Robins v. The Southland Corp.*,
    No. N-7119-1, 1990 WL 751050 (Va. Cir. Ct. Jan. 25, 1990) .......................23, 25

*S. Bank & Tr. Co. v. Woodhouse*,
    No. CL 15009939, 2016 WL 9527885 (Va. Cir. Ct. May 26, 2016)....................25

*Smith v. Shoe Show, Inc.*,
 No. 20-CV-813, 2022 WL 583569 (M.D.N.C. Feb. 25, 2022)...............................18

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016)................................................................................................19

*SunTrust Mortg., Inc. v. Old Second Nat. Bank*,
 No. 12-CV-99, 2012 WL 1656667 (E.D. Va. May 10, 2012) ...............................24

*Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*,
 567 F. Supp. 1184 (N.D.W. Va. 1983) ................................................................16

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021)..............................................................................18, 20, 21

*Ward's Equip., Inc. v. New Holland N. Am., Inc.*,
 493 S.E.2d 516 (Va. 1997)................................................................................25, 26

*Wilderness Med. Ass'n, Inc. v. Nat'l Ass'n for Search & Rescue*,
 No. 125726, 1994 WL 1031397 (Va. Cir. Ct. Oct. 25, 1994) ...........................23, 24

**Statutes and Regulations**

45 C.F.R. § 164.502(b) .........................................................................................13

45 C.F.R. § 180.50(b)(3)..........................................................................................6

29 U.S.C. § 1024(b)(4)...........................................................................................21

29 U.S.C. § 1104(a)(1)......................................................................................10, 14

29 U.S.C. § 1106.............................................................................10, 16, 17, 20

29 U.S.C. § 1185m........................................................................................ *passim*

VA. Code Ann. § 8.2-102 .......................................................................................25

Va. Code Ann. § 8.2-106(1)....................................................................................25

**Rules**

Fed. R. Civ. P. 12(b) ......................................................................................9, 10, 24

# INTRODUCTION

Plaintiff Owens & Minor, Inc. is a sophisticated Fortune 500 company. In 2017, Plaintiff engaged Defendant Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") to provide certain administrative services to Plaintiff's employee health-benefit plan ("Plaintiff's Plan" or the "Plan"). Through this lawsuit, Plaintiff is attempting to circumvent the parties' freely negotiated contract under the guise of the Employee Retirement Income Security Act ("ERISA").[1] The Court should reject Plaintiff's request to expand ERISA, re-write a recent piece of federal legislation, and void portions of the parties' long-standing contractual agreements.

The parties' contract provides Plaintiff with the ability to monitor Anthem's performance of the contracted-for services, including Anthem's processing of claims for coverage of healthcare services under Plaintiff's Plan. The parties agreed that Anthem would provide, at Plaintiff's request, periodic data reports reflecting activity on Plaintiff's accounts. The parties also agreed to procedures for Plaintiff to audit Anthem's claims processing.

The parties also agreed that these activities are subject to certain parameters. For example, the contract states that Anthem will provide a standard data reporting package at no additional cost. The parties may agree to additional reporting for a valid business use, but that may entail additional costs. The contract also allows for an annual claims audit at no additional cost as long as other agreed terms are met. Further, if Plaintiff asks Anthem to send claims data to a third party, the third party must enter into a confidentiality agreement before receiving the claims data.

---

[1] A copy of that contract as it existed when the parties' entered into it in 2017 is attached as Exhibit A to Plaintiff's Complaint (the parties' "contract" is called the Administrative Services Agreement or "ASA").

Such requirements are necessary for a variety of reasons, including because certain claims data reflects Anthem's Proprietary Information, a defined term that the parties agreed on in their contract. It reflects, for example, non-public information about Anthem's claims processing and other operating systems, Anthem's contracting and business strategies related to its provider networks, and reimbursement arrangements that Anthem has negotiated in contracts with medical providers—all of which Anthem uses across its business, not only for Plaintiff's Plan. This proprietary information is particularly sensitive where recipients such as Plaintiff— who sells durable medical equipment—is also a provider of healthcare services and thus competes with other providers whose negotiated rates are reflected in the claims data. The contractual requirements in the parties' agreement also strike a balance between the burden on Anthem of responding to audit requests and preparing claims data reports, and Plaintiff's need to monitor Anthem's performance.

After years of monitoring Anthem under these contractual provisions without complaint and in satisfaction of any ERISA obligations,[2] Plaintiff now contends that the provisions are too restrictive and seeks to override them through this lawsuit. Plaintiff's ERISA and state-law claims are legally flawed for the reasons stated below.[3]

***First***, Plaintiff's allegations fail to state a claim under ERISA (*infra* Section I). Plaintiff asserts that Anthem breached fiduciary duties under ERISA by failing to provide Plaintiff unfettered access to the claims data it requested. Plaintiff suggests that ERISA—and specifically

---

[2] There is nothing in the Complaint suggesting that Anthem did not comply with its contractual obligations to provide standard periodic data reports.

[3] As explained in this brief, even if all of Plaintiff's allegations are true, Plaintiff lacks Article III standing and fails to plausibly state any of the ERISA and state law claims it seeks to assert against Anthem. Anthem will challenge at the appropriate time (1) the truthfulness of the allegations in the Complaint, including but not limited to the nature and history of the at-issue data request and related communications, and any suggestion that Anthem has engaged in any unlawful conduct, (2) any claim that may survive this Motion.

Section 724 of ERISA related to health care costs and quality "transparency," Compl. ¶ 15—requires Anthem to do so. But ERISA Section 724 directs group health plans (here, Owens & Minor) to do certain things. It does not impose any obligation on Anthem as a service provider to the Plan, dooming the claim to fail as a matter of law.

Even if ERISA Section 724 imposed duties on Anthem here, it expressly does not bar the reasonable requirements in the parties' contract. Likewise, nothing in the general ERISA duties of loyalty or prudence requires Anthem to provide claims data free of any contractual limitation. There are no allegations of fact in the Complaint showing that data provided subject to the parties' agreed requirements for data reporting, audits, and confidentiality is not sufficient for Plaintiff to monitor Anthem's performance. And Plaintiff's fallback theory that Anthem mismanaged Plaintiff's claims data and engaged in "self-dealing" in violation of ERISA is legally flawed, factually inaccurate, and built on baseless speculation. At most, Plaintiff's allegations boil down to a dispute about whether Plaintiff's data request and Anthem's alleged response comport with the parties' contractual rights and responsibilities under their long-standing written agreement. The Court should reject Plaintiff's gambit to use ERISA to rewrite the terms of a contract between two sophisticated parties.

***Second***, Plaintiff lacks Article III standing and fails to plausibly allege that Anthem caused any harm as required to state its ERISA and state law claims. Plaintiff's alleged violation of ERISA alone is not sufficient to confer Article III standing. Plaintiff must allege that it has suffered a concrete, particularized, non-speculative injury-in-fact caused by Anthem's failure to disclose claims data free of any contractual requirements. It cannot do so.

***Third***, Plaintiff's state law claims fail for additional reasons. Plaintiff's breach of contract claim seeking specific performance (not damages) fails because Plaintiff does not allege

that it lacks adequate remedies at law and fails to plausibly allege harm caused by Anthem. Further, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, as well as its claim for breach of fiduciary duty under Virginia common law, fail because neither cause of action is available where, as here, the conduct at issue is governed by a contract.

For all of these reasons, the Court should grant Anthem's Motion to Dismiss.

## BACKGROUND

### A. The Parties.

Defendant Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") is a Virginia-based company that offers fully-insured health benefit plans to employers and individuals in Virginia. That insurance offering is not at issue in this case. Anthem also offers, as relevant here, administrative services to employers who sponsor their own self-funded/self-insured group health benefit plans. Compl. ¶¶ 3–4.

Plaintiff Owens & Minor, Inc. is a Fortune 500 company that, among other things, is a provider of durable medical equipment. *See Our Story*, OWENS & MINOR, https://www.owens-minor.com/about/ (last visited March 30, 2023). Plaintiff employs thousands of people across the United States. *See* Compl. ¶ 18. Plaintiff Owens & Minor, Inc. is the sponsor, administrator, and named fiduciary for a self-funded healthcare plan for its employees, known as Owens & Minor Flexible Benefits Plan (the "Plan" and together with Plaintiff Owens & Minor, Inc., "Plaintiff"). *Id.* ¶¶ 18, 91. As a sponsor of a self-funded plan, Plaintiff is responsible for paying from its own assets any covered healthcare expenses incurred by its members. *Id.* ¶ 1.

### B. Anthem's Services.

In 2017, Owens & Minor contracted with Anthem to provide administrative services to assist Plaintiff with certain aspects of the Plan, as set out in the parties' contract. Compl. ¶ 59; Compl. Ex. A.

One of Anthem's responsibilities is processing claims for reimbursement of medical services submitted by medical providers or Plaintiff's members. *See* Compl. Ex. A at Art. 2.b. When a claim is submitted, for example, Anthem applies the terms of Plaintiff's healthcare plan to determine whether the medical service is covered; applies member cost-sharing provisions of Plaintiff's plan (e.g. deductibles or co-payment); coordinates benefits with other payors; and, after Plaintiff approves the claim, disburses payment from Plaintiff to the provider. *See id.* at Art. 2.b–c. Anthem also calculates the price—known as the "allowed amount"—at which Plaintiff will reimburse covered services, subject to any member cost-sharing under the Plan. *Id.* at Art. 2.b. If a member or provider appeals a claim decision, Anthem administers that appeal. *Id.* at Art. 2.c.

## C. Proprietary Systems, Methodologies, and Contracting Strategy.[4]

Anthem calculates the allowed amount for each claim according to its "standard policies and procedures, as well as Provider contracts." *Id.* at Art. 2.o; *see also id.* at Art. 1, Paid Claim. Anthem's provider contracts apply when Plaintiff's members receive medical services from a contracted provider in Anthem's network. *See* Compl. Ex. B at 63 (explaining reimbursement from in-network providers). In those contracts, Anthem negotiates reimbursement arrangements for the provider's services, which can be multifaceted. Anthem often negotiates not only a base negotiated rate for each type of service, but also a methodology that accounts for the specific circumstances in which the patient received that service. If a patient received multiple services during the same visit, for example, those may be "bundled" together and allowed at a rate that is less than the sum of each service individually. *See id.* at 55 (providing example of bundling of multiple services from the same visit). Similarly, Anthem may have agreed to pay a "percentage

---

[4]   Anthem provides this information for context. The definition of each side's proprietary information is not relevant to the legal deficiencies of Plaintiff's claims.

of charges," Compl. Ex. A at Art. 1, Paid Claims, that may be higher in some circumstances—
e.g. 120% of charges for a knee replacement that takes five hours—and lower in others—e.g.
60% of charges for a knee replacement that takes two hours. The overall reimbursement may
also be "increased or decreased by the Provider's or Vendor's achievement of, or failure to
achieve, certain specified goals, outcomes or standards adopted by Anthem." *Id.* These are just
a few examples.

The policies, procedures, and provider contracts that Anthem uses to determine the
allowed amount are not specific to Plaintiff's Plan. They are also used for Anthem's other self-
funded and fully insured plans. *See id.* at Art. 2.o; Compl. ¶ 69. Nor are they public.[5] Hence,
the parties agreed in their contract that "Anthem's Proprietary Information" includes:

(1) "Information about Anthem's Provider networks, Provider negotiated fees, Provider
discounts, and Provider contract terms;"

(2) "[I]nformation about the systems, procedures, methodologies, and practices used by
Anthem and Anthem Affiliates in performing their services such as . . . Claims
processing [and] Claims payment . . . ; and"

(3) "[C]ombinations of data elements that could enable information of this kind to be
derived or calculated."

Compl. Ex. A at Art. 1, Proprietary Information and Confidential Information.

### D. Data Reports and Claims Audits.

---

[5] Recent price transparency laws require hospitals and group health plans or health insurance
issuers to publicly post negotiated rates for individual items or services, but not other aspects of
the arrangements that account for the particular circumstances of a patient's visit. *See*, *e.g.*, 45
C.F.R. § 180.50(b)(3) (requiring hospitals to disclose the "payer-specific negotiated charge that
applies to each item or service"); *Am. Hosp. Ass'n v. Azar*, 468 F. Supp. 3d 372, 386, n.14
(D.D.C.), *aff'd*, 983 F.3d 528 (D.C. Cir. 2020) (acknowledging that posted "base negotiated rate"
"does not account for adjustments that may affect final payment").

Anthem maintains data capturing certain aspects of its claims processing, including the allowed amount for each claim. *See*, *e.g.*, Compl. ¶ 22. Among other things, the allowed amount in claims data reflects Anthem's Proprietary Information—including negotiated arrangements with providers. That is particularly true in combination with other fields and when large amounts of claims data are pulled together into one data set, which may allow users to derive Anthem's negotiated arrangements with providers, as well as Anthem's procedures, methodologies, systems, and strategies. *See* Compl. Ex. A at Art. 1, Proprietary Information and Confidential Information.

To protect Anthem's Proprietary Information, and to manage the burden of gathering and producing claims data, the parties' contract sets out specific parameters for use of claims data— and conditions that must be met.

First, Anthem agreed to provide Plaintiff with periodic data reports. *See id.* at Art. 11. Plaintiff has access to Anthem's "standard account reporting package" upon request. *Id.* at Art. 11.a. If Plaintiff requests more than that standard report, the parties must "agree to the types, format, content and purpose of the reports requested." *Id.* Plaintiff agreed that it would only use claims data reflecting Anthem's Proprietary Information "for the purpose of administering the plan." *Id.* at Art. 10.c.

Second, if Plaintiff desires to send the claims data extract or data report to a third party, the third party must also "enter into a confidentiality agreement . . . with respect to the planned disclosure." *Id.* at Art. 10.d, 11.b. The third party will be "subject to the restrictions set forth in Article 10," addressing the parties' "Proprietary and Confidential Information." *Id.* at Art. 11.b.

Third, Plaintiff may conduct a claims audit "once each calendar year." *Id.* at Art. 12.c. If Plaintiff retains a third party to conduct the audit, before receiving claims data, the "auditor or

consultant must execute [an] indemnification agreement with Anthem pertaining to Anthem's Proprietary and Confidential Information prior to conducting an audit." *Id*. at Art. 12.b. The third party must also "enter into a confidentiality agreement with Anthem . . . prior to Anthem's release of the extract or report." *Id.* at Art. 11.b. And the "scope of the audit shall be agreed to in writing by the Parties prior to the commencement of the audit." *Id.* at Art. 12.c.

### E. Plaintiff's Data Requests.

Plaintiff requested a wide breadth of information—including Anthem's Proprietary Information—from Anthem, allegedly to "evaluate the Plan's performance under [Anthem's] administration of the Plan." Compl. ¶ 28. On the very same day, Anthem agreed to provide the data, *id.* ¶ 29, which it intends to do, as long as the relevant ASA requirements are met. Indeed, Anthem has already provided Plaintiff with some of the requested data. *See id.* at 11 n.11.

Consistent with its rights under the ASA, Anthem sought more information when it received Plaintiff's request. Plaintiff had demanded the "'most comprehensive data layouts and element that already exist internally' pertaining to the Plan." *Id.* ¶ 30. Anthem asked for more details about exactly what data elements Plaintiff sought. *See*, *e.g.*, *id.* ¶ 31; *see also* Compl. Ex. A at Art. 11.a ("the Parties must mutually agree to the types, format, content and purpose of the reports requested"). Anthem also asked for more information about the purpose of the request. *See*, *e.g.*, Compl. ¶ 44; *see also* Compl. Ex. A at Art. 10c. (Plaintiff "shall use and disclose [Anthem's] Information solely for the purpose of administering the Plan"), 12.c ("The scope of the audit shall be agreed to in writing by the Parties prior to the commencement of the audit."). Plaintiff and Anthem exchanged a series of messages regarding the scope and purpose of the data request over the following several months. *See* Compl. ¶¶ 28–42. Among other things, Anthem communicated that it would not provide claims data reflecting negotiated arrangements with other providers of durable medical equipment—given that Plaintiff sells durable medical

equipment and competes with those providers. *Id*. ¶ 46. Anthem ultimately agreed to provide the data elements that Plaintiff requested—except data on other durable medical equipment providers—subject to other contractual requirements, such as agreement on intended use. *See id*. ¶¶ 46, 51.

Later, Plaintiff decided that it wanted Anthem to send claims data to its counsel—a third party. *Id.* ¶ 55. That triggered the requirement that third parties sign a confidentiality agreement before receiving any data. *Id.* ¶ 55; *see* Compl. Ex. A at 10.d (requiring third parties to enter a confidentiality agreement with respect to disclosure of Anthem's Information). As Anthem informed Plaintiff, this additional step would not be necessary "[i]f the data were to be shared directly with [Plaintiff]." Compl. ¶ 51. Plaintiff's counsel refused to complete the confidentiality agreement—cutting off discussions of its provisions. *See id.* ¶¶ 55–56. Instead, nearly six months later, Plaintiff filed this lawsuit.

## F. Plaintiff's Lawsuit.

Plaintiff first asserts two claims under ERISA—that Anthem breached ERISA fiduciary duties and violated ERISA's prohibition on "self-dealing"—when it followed the confidentiality, data reporting, and audit provisions of the ASA before providing the requested data. *Id.* ¶¶ 94–112. In alternative counts, Plaintiff also asserts three claims under Virginia state law: breach of contract, *id.* ¶¶ 114–119; breach of good faith and fair dealing, *id.* ¶¶120–125; and breach of fiduciary duty, *id.* ¶¶ 126–130. Plaintiff does not seek damages. Instead, Plaintiff asks this Court to "order [Anthem] to produce the Plan information and data previously requested by Plaintiff." *Id.* ¶ 132. Under its state law claims, Plaintiff seeks an equivalent remedy in the form of specific performance of the contract. *Id*. ¶¶ 132, 134. As described previously, Anthem offered to disclose the agreed-upon data elements within the parameters of its rights and obligations under the ASA.

**LEGAL STANDARD**

A Rule 12(b)(6) motion is "an important mechanism for weeding out meritless claims" in the ERISA context. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). To survive a Rule 12(b)(6) motion, the factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A plaintiff must show "more than the sheer possibility that a defendant has acted unlawfully" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint must contain "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

A plaintiff also has the burden to "demonstrate standing for each claim he seeks to press" and "for each form of relief" sought. *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 983 F.3d 671, 680 (4th Cir. 2020) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). Failure to do so is grounds for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Beck v. McDonald*, 848 F.3d 262, 267 (4th Cir. 2017).

**ARGUMENT**

**I.      Plaintiff fails to state a claim for violation of ERISA (Count I).**

Plaintiff alleges in its first cause of action (Count I) that Anthem violated ERISA by failing to abandon the requirements in the parties' contract. Compl. ¶¶ 98–102, 111. Plaintiff's Complaint fails to specify under what provision of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), Plaintiff claims entitlement to its requested relief. But regardless, under the other ERISA provisions that Plaintiff references, Plaintiff purports to bring two ERISA-based claims: (1) breach of fiduciary duties under 29 U.S.C. § 1104; and (2) a prohibited transaction for "self-dealing" under 29 U.S.C. § 1106. Plaintiff fails to state a claim for either count. Even if Anthem was an ERISA fiduciary with regard to the alleged conduct,[6] none of Anthem's alleged conduct breached any duty or constituted a prohibited transaction under ERISA. Accordingly, Count I should be dismissed.

---

[6] To determine whether a defendant is a fiduciary, the court must ask whether that person or entity is a fiduciary with respect to the **particular activity at issue**. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61–62 (4th Cir. 1992) ("The statutory language plainly indicates that the fiduciary function is not an indivisible one."). While Anthem is not moving under 12(b)(6) on this issue at this time, Anthem will later challenge any claim that it is a fiduciary with respect to conduct alleged in the Complaint.

## A. Plaintiff fails to allege any conduct that violates ERISA Section 724.

To the extent Plaintiff's claims are based on the Consolidated Appropriations Act of 2021, amending ERISA Section 724 (codified at 29 U.S.C. § 1185m), *see* Compl. ¶¶ 15, 111, Plaintiff fails to plead a violation of ERISA Section 724 by Anthem. As the relevant statutory text makes clear, none of Anthem's alleged conduct violates Section 724 or gives rise to an ERISA claim *against* Anthem. To start, Section 724 does not impose any obligations on Anthem whatsoever. The law prohibits "a group health plan" or "an issuer of health insurance coverage offered in connection with such a plan" from "enter[ing] into an agreement" with certain parties that would restrict the plan from accessing specific financial, cost, and quality of care information, as set out in the statute. 29 U.S.C. § 1185m(a)(1).

Plaintiff's fundamental ERISA problem is this: Anthem is not a "group health plan" or "issuer of health insurance coverage" in this situation. Plaintiff acknowledges this in its Complaint. Plaintiff alleges that Anthem is instead "[Plaintiff's] administrative services organization." Compl. ¶ 43. Because Section 724 does not prohibit Anthem, as an administrative services organization (i.e., service provider), from doing anything at all, Anthem simply is not within in the ambit of—and therefore could not have violated—Section 724. By its plain language, Section 724 applies to *Plaintiff* as the group health plan, not Anthem as the service provider. If Plaintiff believes that it needs to renegotiate its contract to meet *its* obligations under Section 724, it is free to do so. But Section 724 does not impose any duty on Anthem as a service provider, and there is no basis for extending Section 724 beyond the plain text that Congress drafted. *Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent.").

Even if Section 724 did bind Anthem (which it does not), Plaintiff still fails to state a claim based on Section 724. Section 724, by its plain terms, does not prohibit all restrictions on data reporting, let alone the reasonable restrictions in the parties' contract. Rather, Section 724 sets out specific types of information that a group health plan shall be able to provide to certain people (e.g., referring physicians, plan sponsors, plan participants), have access to, or be able to share with a business associate (defined under HIPAA). *See, e.g.*, 29 U.S.C. § 1185m(a)(1)(A–C). And, importantly here, Section 724 ***explicitly clarifies*** that service providers can place "***reasonable restrictions on the public disclosure***" of those specific types of information. *Id.* § 1185m(a)(2) (emphasis added). The statute also instructs that the right to data access does not trump privacy laws restricting disclosure of certain information, including, for example, personal health information (PHI), providing that "[n]othing in this section shall be construed to modify or eliminate existing privacy protections and standards under State and Federal law." *See id.* § 1185m(a)(4); *see also id.* § 1185m(a)(1)(C) (stating that data or information shared with a business associate must still be shared "consistent with the privacy regulations promulgated" under HIPAA, among others).

Plaintiff fails to allege any facts that, if true, would show the parties' negotiated restrictions in the ASA and other plan documents are unreasonable under the terms of Section 724. The ASA's requirement regarding the need for a signed confidentiality agreement before providing claims data to a third party is squarely directed at protecting against public disclosure, consistent with Section 724. 29 U.S.C. § 1185m(a)(2). Similarly, maintaining a use requirement is necessary and squarely allowed by ERISA to ensure that, among other things, the intended use does not contemplate public disclosure or use of confidential and proprietary information to put Anthem at a competitive disadvantage—for example, a plan trying to compete with Anthem by

contracting directly with providers or a plan disclosing data to a vendor that uses the data to support Anthem's competitors.  *See* Compl. Ex. A at 10.c.  It also ensures that clients like Plaintiff, who are themselves providers of durable medical equipment, cannot use the data to compete with Anthem's other durable medical equipment providers.  Finally, these requirements ensure that Anthem's disclosures to designated third parties comply with HIPAA.  For example, HIPAA prohibits disclosure of PHI when it is not "necessary to accomplish the intended purpose of the use, disclosure, or request."  *See* 45 C.F.R. § 164.502(b).  Without a clearly articulated use, Anthem cannot evaluate whether the claims data requested is the minimum necessary.  *Cf. Fifth Third Bancorp*, 573 U.S. at 428 (ERISA "does not require a fiduciary to break the law").

Because Section 724 does not impose any duties on Anthem, Plaintiff's ERISA claim premised on Section 724 fails.  Even if Section 724 applied to Anthem in the way Plaintiff asserts, none of the contract provisions governing confidentiality, audits, and data reporting run afoul of Section 724's requirements.

## B. Plaintiff fails to allege that purported requirements for claims data reports violate any ERISA fiduciary duties.

Section 724 is not altogether irrelevant to Plaintiff's claims.  To the contrary, because Congress has shown that it knows how to regulate disclosure of healthcare claims-related information, its decision not to impose obligations on service providers like Anthem must be considered a deliberate choice.  *See Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 716 (4th Cir. 1996) ("[W]e are not to give with the judicial hand what Congress has failed to provide in legislation."); *Ehlmann v. Kaiser Found. Health Plan*, 198 F.3d 552, 555 (5th Cir. 2000) ("[T]his court should not add to the specific disclosure requirements that ERISA already provides.").  The Court must infer that Congress deliberately chose not to legislate service providers, and particularly so where HIPAA already carefully regulates the transfer of healthcare

data.  *See Ehlmann*, 198 F.3d at 555 ("That Congress and DOL were so capable of enumerating disclosure requirements when they wanted to means that the absence of one regarding physician compensation plans was probably intentional.").

This is consistent with how courts have interpreted general fiduciary duties under Section 404(a).  ERISA Section 404(a) requires that fiduciaries act prudently and solely in the interest of the plan's participants and beneficiaries.  *See* 29 U.S.C. § 1104(a)(1).  While Section 404(a) establishes a general fiduciary duty, it does not mandate a duty to disclose claims data free of any conditions.

The Fourth Circuit has rejected similar attempts by ERISA plaintiffs to read into the general duties of prudence and loyalty under Section 404(a) a specific disclosure obligation that plaintiffs were unable to locate in other parts of the statute.  In *Faircloth v. Lundy Packing Co.*, the court rejected the plaintiff's claims that an ERISA fiduciary violated ERISA § 104(b)(4) by refusing to provide documents related to the employee stock ownership plan.  91 F.3d 648, 658 (4th Cir. 1996).  As an argument in the alternative, the plaintiff "argue[d] that even if §104(b)(4) does not require the administrator of the [Plan] to furnish the requested documents," the court should hold that the duties of loyalty or prudence under ERISA required the fiduciaries to furnish the requested documents.  *Id.* at 656–58.  The Fourth Circuit refused to import into Section 404(a) a specific duty that Congress declined to include elsewhere.  *Id*. at 657 ("ERISA's reporting and disclosure scheme . . . 'may not be a foolproof informational scheme . . . . Either way, it is the scheme that Congress devised.  And we do not think Congress intended it to be supplemented by a far-away provision in another part of ERISA.'") (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995)) (alteration omitted).  So too here: because

Section 724 does not impose a specific duty to disclose claims data free of any restriction, the Court should decline to read such a requirement into the general duties under Section 404(a).

This is why courts closely scrutinize whether information sought by an ERISA plaintiff is necessary to reasonably determine the plaintiff's professed goal. For example, a court within this district rejected an interpretation of ERISA that would "render meaningless the detailed disclosure requirements of ERISA, and [] subject fiduciaries to the onerous duty of disclosing every piece of information which might conceivably be useful." *DiFelice v. Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453, 464–65 (E.D. Va. 2005). Similarly, in *In re Express Scripts/Anthem ERISA Litigation*, the court rejected the argument that the general duty under Section 404(a) requires fiduciaries to disclose non-public financial information where plaintiffs were already provided with adequate information to assess their benefits and plan administration. 285 F. Supp. 3d 655, 675 (S.D.N.Y. 2018). Plaintiff's claims here are similarly flawed. Plaintiff does not—and cannot—allege it is unable to access the claims data that it needs in order to monitor Anthem's administrative services for the Plan, which Plaintiff has been doing under the parties' contract for years. Instead, Plaintiff alleges that ERISA entitles it to unfettered data production without first having to comply with the limited, reasonable requirements that it agreed to in the ASA. "This is far from the type of disclosure typically required under ERISA." *Id*.

At most, Plaintiff's allegations boil down to a dispute over whether Plaintiff's data request and Anthem's alleged response comport with the parties' respective interpretation of their contractual rights and responsibilities under their long-standing written agreement. *See*, *e.g.*, Compl. ¶¶ 25, 84, 102 (referring to the "many protections of 'proprietary' and 'confidential' information under the [parties'] relevant agreements," asserting Anthem "mischaracterized"

claims data as "[its] 'proprietary' or 'confidential' information" under the parties' contract, and claiming Plaintiff "would not have engaged [Anthem's] services" if it had known this). The Complaint does not allege Anthem violated any provision of ERISA Section 724. Similarly, Plaintiff cannot turn their quibble with the requirements the parties' contract places before providing data reports into a valid fiduciary breach claim under ERISA. ERISA's fiduciary duties do not extend that far.

**C. Plaintiff's prohibited transaction claim is wholly speculative.**

In two paragraphs of the Complaint, Plaintiff alleges that Anthem committed a prohibited transaction in violation of 29 U.S.C. § 1106(b) by dealing with "assets of the plan" in its own interest and for its own account. Compl. ¶¶ 106–107. Plaintiff's throwaway "prohibited transaction theory" fails to state a claim for several reasons.

Even taking as true that the claims data could be construed solely as "plan assets" and that Anthem refused to provide the requested data to Plaintiff (both of which Anthem disputes), Plaintiff fails to allege any facts that Anthem unlawfully dealt with such "assets" for its own interest or its own account. "[F]or the provisions of 29 U.S.C. § 1106 to apply, there must be a transaction involving the monies, property, or other assets of the fund." *See Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 567 F. Supp. 1184, 1199 (N.D. W. Va. 1983). This follows from a plain reading of the statute, which prohibits certain "*[t]ransactions* between plan and a fiduciary." 29 U.S.C. § 1106 (emphasis added). And it is well settled that a defendant's *failure* to act cannot constitute a "transaction" for purposes of Section 406(a) or 406(b). 29 U.S.C. § 1106(b); *see David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013) ("common understanding of the word 'transaction' implies that an affirmative action is required"). Here, Plaintiff has not alleged that Anthem engaged in any "transaction" with the claims data; at most it has alleged a failure to

do an affirmative act to comply with Plaintiff's demands to provide certain information. That does not state a claim under Section 1106.

Plaintiff also alleges that Anthem has dealt with claims data in its "own interest or for [its] account" because if Anthem produced the data, it ***might*** show fiduciary breaches or performance issues. Compl. ¶ 107. But, as explained in Section II below, the Complaint is devoid of any allegations of fact to support such an inference. Plaintiff makes the legal assertion that a reasonably prudent and loyal fiduciary would provide a plan sponsor with unfettered access to claims data and then states in a conclusory and circular fashion that Anthem's refusal to do so must mean it is concealing misconduct. *Id.* ¶¶ 99, 100, 102. That is too illogical of a leap, especially because, as pled, the parties' contract included specific parameters for data reporting and audits. Indeed, Plaintiff alleges only on "information and belief" that Anthem seeks to conceal mismanagement of fund assets ***or*** conceal self-dealing ***or*** prevent Plaintiff from monitoring Anthem's performance, ***or*** "some other self-interested purpose." *Id.* ¶ 101. Such allegations made on "information and belief," while permissible under Rule 8(a), do not open the door to wholesale, implausible speculation. *See, e.g.*, *Raub v. Bowen*, 960 F. Supp. 2d 602, 615 (E.D. Va. 2013) ("[T]he preamble 'on information and belief' is a device frequently used by lawyers to signal that they rely on second-hand information to make a good-faith allegation of fact . . . . [T]his practice is permissible . . . however, [it] signal[s] that the allegations [may be] tenuous at best.") (citations omitted). This kitchen-sink approach, untethered from any ***factual*** allegations from which the court could infer misconduct, does not allege anything more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.[7] Plaintiff's

---

[7] *See also Smith v. Shoe Show, Inc.*, No. 20-CV-813, 2022 WL 583569, at *8, *10 (M.D. N.C. Feb. 25, 2022) (finding allegations concerning "possible" and "potential" motives do not rise to the level of plausibility necessary to state a disloyalty claim, and that "despite ERISA litigation's

allegations of mismanagement or self-dealing are pure speculation. *Twombly,* 550 U.S. at 556. They cannot support a prohibited transaction claim.

## II. Plaintiff lacks standing because it fails to plausibly allege any harm caused by Anthem's conduct (All Counts).

All of Plaintiff's claims should also be dismissed for one overarching reason: Plaintiff fails to plausibly allege harm sufficient to confer Article III standing. To establish Article III standing, Plaintiff must allege plausible facts sufficient to show that Plaintiff suffered an "injury in fact that is concrete, particularized, and actual or imminent" and that was "likely caused by the defendant." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiff must make this showing "for each claim that they press and for each form of relief that they seek." *Id.* at 2208.

Plaintiff alleges two theories of harm in its Complaint: (1) Anthem's alleged failure to disclose claims data concealed Anthem's mismanagement of fund assets or self-dealing (*see* Compl. ¶¶ 101, 124); and (2) Anthem's alleged failure to disclose claims data frustrated Plaintiff's monitoring and disclosure duties under ERISA (*see id.* ¶¶ 103, 105). Neither of those theories is sufficient to show Article III standing or the harm necessary to state a claim for relief.

### A. Plaintiff's speculation that Anthem's failure to disclose claims data may have concealed mismanagement or self-dealing cannot confer standing.

Plaintiff's first alleged theory of harm is abject speculation devoid of any plausible factual basis. Notably, Plaintiff does not allege that ***Anthem*** is engaged in illegal conduct. The most it has alleged are certain reports regarding accusations of misconduct against ***other*** insurers which allegedly "heightened Plaintiff's sensitivity to the risks posed by the TPA managing Plaintiff's plan." Compl. ¶ 7. In other words, Plaintiff asks this court to find that is has standing

inherent information asymmetries, pursuant to *Iqbal. . .* , this court simply cannot allow this 'threadbare' and 'conclusory' claim to proceed") (citations omitted).

to sue based on nothing more than the "risk" that Anthem **could be** involved in some undefined and unspecified misconduct because of allegations that non-parties have previously engaged in some form of misconduct. That is anathema to the concept of Article III standing. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (a "speculative chain of possibilities" is not sufficient to establish standing); *David v. Alphin*, 704 F.3d at 338 ("We find these risk-based theories of standing unpersuasive, not least because they rest on a highly speculative foundation lacking any discernible [sic] limiting principle."); *Int'l Union v. Consol Energy, Inc.*, 465 F. Supp. 3d 556, 576 (S.D. W. Va. 2020) (finding plaintiffs lacked standing to seek injunctive relief to prevent misrepresentations in plan communications because harm Congress sought to prevent through allowing suits pursuant to 502(a)(3) was injury to plaintiffs' plan benefits and plaintiffs had alleged only a statutory violation without any such harm). Even a prior injury by the **same** defendant will not establish standing unless the plaintiff can demonstrate an actual or imminent particularized and concrete harm. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 98 (2013) ("[W]e have never held that a plaintiff has standing to pursue declaratory relief merely on the basis of being 'once bitten.' Quite the opposite."). Plaintiff's speculative theory does not confer standing.

### B. Plaintiff's allegation that Anthem's failure to disclose claims data free of contractual requirements frustrated its ERISA monitoring duties cannot confer standing.

Plaintiff's second alleged theory of harm—that Anthem's failure to disclose claims data free of any contractual requirement violated ERISA and frustrated Plaintiff's ERISA monitoring and reporting duties—is similarly insufficient to establish standing. The violation of a statute such as ERISA is not sufficient to establish a concrete injury-in-fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a

statutory violation."). Nor is the alleged denial of information that is required by statute to be disclosed. *See*, *e.g.*, *TransUnion LLC*, 141 S. Ct. at 2214 ("[A]sserted informational injury that causes no adverse effects cannot satisfy Article III.") (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). Indeed, the Fourth Circuit has firmly rejected the concept that the mere alleged deprivation of statutory rights can constitute an injury-in-fact. *David v. Alphin*, 704 F.3d at 338 ("[T]his theory of Article III standing is a non-starter as it conflates statutory standing with constitutional standing."). Therefore, any allegation that Plaintiff breached general ERISA fiduciary duties or somehow violated 29 U.S.C § 1106(b), even if true, would still be insufficient to support Plaintiff's standing in this case. Rather, Plaintiff must plausibly allege that the alleged denial of information free of any restrictions caused actual or imminent, concrete and particularized injury. *Id.* The concreteness inquiry in particular "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC*, 141 S. Ct. at 2204. Plaintiff has not done so—and cannot do so—in this instance.

Plaintiff does not allege that Anthem refused to provide claims data altogether. Indeed, Plaintiff acknowledges that Anthem provides its standard reporting package to Plaintiff. Compl. ¶ 28. Rather, Plaintiff objects principally to the fact that, consistent with the parties' contract, Anthem made access to certain proprietary information in the claims data contingent on agreement to the form and purpose of the claims data and signing a confidentiality agreement. *Id*. ¶¶ 28–55.

Plaintiff cannot plausibly allege that if it received claims data subject to these conditions, it would be unable to perform its ERISA monitoring or disclosure functions. Indeed, given that Plaintiff did not make these demands until 2021 and has retained Anthem as an administrator

since 2017, *see id.* ¶ 4, for Plaintiff to take that position would be tantamount to an admission of liability for breach of Plaintiff's fiduciary duties from 2017 to 2021. Further, the fact that Plaintiff now seeks claims data stretching back to 2017, *id.* ¶ 28, makes clear that it is not seeking claims data for any current ERISA attestation requirement, which would only implicate recent claims data. Moreover, the contract allows for routine claims audits for these very purposes. Plaintiff is permitted to analyze claims data to monitor the Plan; it just cannot do so without a confidentiality agreement and other conditions negotiated in the parties' contract. Because there is no "close historical or common-law analogue" for claims based only on allegations that a plaintiff did not receive information in the form it desired, Plaintiff lacks standing. *See TransUnion LLC*, 141 S. Ct. at 2214 (finding no standing because "plaintiffs did not allege that they failed to receive any required information[;] [t]hey argued only that they received it *in the wrong format*").[8]

Plaintiff also includes a single sentence alleging that it was "harmed" because Anthem's "misconduct would interfere with certain disclosure requirements under ERISA." Compl. ¶ 105. However, the only example of such a statute that it can muster is 29 U.S.C. § 1024(b)(4), which provides an enumerated list of items that the administrator is responsible for providing to a participant or beneficiary upon written request, ***none*** of which the Complaint alleges were in

---

[8] Plaintiff's allegation that it would incur additional expense or require guesswork in the absence of the "outstanding information and data," where Anthem agreed to provide the requested data elements subject to contractual requirements that must be met, does not confer standing either. *See Podroykin v. Am. Armed Forces Mut. Aid Ass'n*, Civil Action No. 21-cv-588, 2022 WL 6755834, at *4 (E.D. Va. Oct. 11, 2022) (no standing for "self-imposed" harm of purchasing identity theft protection in response to a "speculative threat"); *Holland v. Consol Energy, Inc.*, 781 F. App'x 209, 213 (4th Cir. 2019) (expenditures to identify, avoid, or mitigate harm do not establish standing unless a "substantial risk of harm actually exists") (citation omitted).

dispute here.[9]  As discussed *supra*, ERISA does not require disclosure beyond those enumerated items just because Plaintiff wants more or subjectively thinks that it may need more.  It is therefore completely implausible that Anthem "harmed" Plaintiff's ability to comply with its disclosure obligations.

Because Plaintiff has failed to plausibly allege an injury-in-fact resulting from contractual requirements for providing claims data reports and disclosures of such to third parties, Plaintiff's claims must be dismissed.  *See*, *e.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1160 (N.D. Cal. 2022) (dismissing ERISA claim for allegedly inadequate disclosures because plaintiffs failed to plausibly allege an injury-in-fact resulting from those disclosures; "simply because a plaintiff has statutory standing under ERISA does not mean that the plaintiff has Article III standing, which requires that the plaintiff show injury in fact").

## III.     Each of Plaintiff's state law causes of action fails to state a claim.

Plaintiff alleges three Virginia state law causes of action: breach of contract, breach of good faith and fair dealing, and breach of fiduciary duty.  Compl. ¶¶ 113–130.  Each is legally deficient.  Plaintiff fails to plausibly allege harm caused by Anthem as required to state a claim for breach of contract.  Plaintiff also fails to allege all requisite elements for equitable relief—the only relief it seeks for breach of contract.  *Id*. ¶¶ 114–119.  Plaintiff's other two state law claims also fail because they do not apply where the conduct in question is governed by a contract.  *See id*. ¶¶ 120–130.  Accordingly, Plaintiff's state law causes of action should be dismissed.

### A.  Plaintiff fails to state a claim for breach of contract.

_____

[9] *Compare* Compl. ¶ 42, *with* 29 U.S.C. § 1024(b)(4) ("furnish a copy of the latest updated summary plan description[,] and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated").

Plaintiff alleges that Anthem breached the parties' ASA,[10] but fails to allege facts showing any consequential injury or right to specific performance.

In Virginia, a party pleading a cause of action for breach of contract must allege facts showing an injury or damage incurred as a result of the defendant's breach. *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 298–99 (Va. 2016). But Plaintiff does not plausibly allege any injury here. The Complaint makes a single, conclusory assertion regarding the injury element of its breach of contract claim: "As a result of [Anthem's] breaches, Plaintiff has suffered harm as set forth above." Compl. ¶ 119. And, as discussed in Section II above, nothing in the rest of the Complaint plausibly establishes that Plaintiff has suffered any injury as a result of Anthem's alleged actions. Accordingly, Plaintiff has failed to allege breach of contract under Virginia law.[11]

Plaintiff's breach of contract claim also fails because Plaintiff has not sufficiently pled specific performance—the only remedy it seeks. *See id.* ¶ 134;[12] *see also id.* at 7 n.9 (no monetary damages alleged). Specific performance is an equitable remedy available only to plaintiffs who lack an adequate remedy at law. *LMP Holdings, LLC v. PLY Enterprises, LLC*, No. 12-CV-440, 2012 WL 4344302, at *5 (E.D. Va. Sept. 21, 2012) (applying Virginia law). And "specific performance of contracts involving the provision of services is generally

---

[10] Although not addressed in this motion, Anthem denies that it breached the ASA or any other contract with Plaintiff.

[11] Similarly, absent plausible harm, Plaintiff cannot state a claim for an injunction—the only remedy it seeks for the alleged breach of good faith and fair dealing and fiduciary duty claims. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must . . . demonstrate . . . that it has suffered an irreparable injury[.]").

[12] Plaintiff's Prayer for Relief includes "an order requiring [Anthem] to produce the Plan information and data previously requested by Plaintiff." Compl. ¶ 132. To the extent this request applies to the breach of contract claim, it appears to be a redundant request for specific performance of the ASA.

disfavored in Virginia." *HotJobs.com, Ltd. v. Digital City, Inc.*, No. 164237, 2000 WL 33333529, at *4 (Va. Cir. Ct. Mar. 8, 2000). "There must be something other than a simple contract dispute that is not otherwise redressable by a damage award to make a case a proper subject matter for equity." *Robins v. The Southland Corp.*, No. N-7119-1, 1990 WL 751050, at *1 (Va. Cir. Ct. Jan. 25, 1990); *see also Wilderness Med. Ass'n, Inc. v. Nat'l Ass'n for Search & Rescue*, No. 125726, 1994 WL 1031397, at *2 (Va. Cir. Ct. Oct. 25, 1994) ("[Plaintiff] has raised an ordinary breach of contract claim, and accordingly, can obtain adequate redress in the form of dollar damages.").

Accordingly, a plaintiff seeking specific performance as a remedy for breach of contract must allege that it lacks an adequate remedy at law—otherwise, the complaint fails to state a claim upon which relief can be granted. *LMP Holdings*, 2012 WL 4344302, at *5; *see also* Fed. R. Civ. P. 12(b)(6). Where the text of a contract is silent regarding remedies, it is even more imperative that a plaintiff asking for specific performance allege inadequate remedy at law in its complaint. *Cf. Hamlet v. Hayes*, 641 S.E.2d 115, 118 (Va. 2007) (specific performance was proper remedy where contract explicitly allowed for it); *SunTrust Mortg., Inc. v. Old Second Nat. Bank*, No. 12-CV-99, 2012 WL 1656667, at *3 (E.D. Va. May 10, 2012) (specific performance was appropriate where included as a potential remedy in a negotiated contract).

Plaintiff has failed to show its entitlement to specific performance of the ASA. Plaintiff alleges that Anthem breached the ASA, Compl. ¶ 118—but nowhere does Plaintiff make any allegation that it lacks an adequate remedy at law for its breach of contract claims. That alone is fatal to Plaintiff's request for specific performance based on alleged breach of contract. *LMP Holdings*, 2012 WL 4344302, at *5. Rather than a case warranting specific performance, this is at most an "ordinary breach of contract claim," and thus monetary damages would be the

appropriate remedy *if* Plaintiff could show any consequential harm (which Plaintiff fails to do). *See Wilderness Med. Ass'n*, 1994 WL 1031397, at *2. Plaintiff has not shown any reason why monetary damages would not redress the alleged breach of contract, and, in any case, "[m]ere difficulty in the burden of proof as to damages does not give a ticket into equity if those damages are in fact ascertainable." *Robins*, 1990 WL 751050, at *1. The ASA's silence regarding specific performance is just additional evidence that the "disfavored" remedy of specific performance is improper here. *See Suntrust Mortg.*, 2012 WL 1656667, at *3; *HotJobs.com*, 2000 WL 33333529, at *4.

Plaintiff has therefore failed to state a claim for breach of contract. And Plaintiff's alternative Prayer for Relief under ERISA does not relieve its burden to also sufficiently plead all necessary elements of its state law claims. *See LMP Holdings*, 2012 WL 4344302, at *5. Accordingly, Plaintiff's breach of contract claim should be dismissed.

**B. Plaintiff fails to state a claim for breach of good faith and fair dealing.**

The Virginia Supreme Court has made clear that "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). Although Virginia law recognizes an implied covenant of good faith and fair dealing in certain contracts, a breach of this duty "is not a separate tort, but rather 'gives rise only to a cause of action for breach of contract.'" *Perez v. Cenlar, Cent. Loan Admin. & Reporting*, No. CL19-10130, 2022 WL 18360345, at *3 (Va. Cir. Ct. Apr. 19, 2022) (quoting *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996)).

The implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip.*, 493 S.E.2d at 520; *see also Hershberger v. Bank of Am., N.A.*, No. CL 130270, 2013 WL

12237927, at *2 (Va. Cir. Ct. Sept. 13, 2013) (no implied duty of good faith and fair dealing because "all of the rights and remedies are contained within the contract"). Some Virginia courts do not recognize an implied covenant of good faith and fair dealing at all in any contract—like this one—to which the UCC does not apply. *See S. Bank & Tr. Co. v. Woodhouse*, No. CL 15009939, 2016 WL 9527885, at *6 (Va. Cir. Ct. May 26, 2016) (collecting cases); *see also* Va.Code Ann. §§ 8.2-106(1), 8.2-102 (UCC applies only to transactions for sale of goods).

To the extent Plaintiff bases its breach of good faith and fair dealing claim on the ASA, the claim is duplicative of the alleged breach of contract claim and therefore must be dismissed. *See Perez*, 2022 WL 18360345, at *3. Plaintiff dedicates an entire section of its Complaint to showing that "[Anthem] Exercised Extensive Control and Discretion Over Plan Data and Information at Issue in this Case," in accordance with the terms of the ASA. Compl. ¶¶ 82–88. And Articles 10, 11, and 12 of the ASA demonstrate that the parties extensively contemplated their duties regarding proprietary and confidential information, data reports, and claims audits. Compl. Ex. A at Arts. 10, 11, 12. Accordingly, "all of the rights and remedies" at issue in this case "are contained within the contract," which prohibits Plaintiff from implying a duty of good faith and fair dealing. *See Hershberger*, 2013 WL 12237927, at *2.

Furthermore, Plaintiff and Anthem are sophisticated entities that freely negotiated the terms of the ASA. Plaintiff now wants to impose additional data reporting duties on Anthem outside of the contract. *See* Compl. ¶ 123 (acknowledging that Anthem's actions may not be "expressly prohibited by the governing contracts"). But Plaintiff cannot be allowed to unilaterally rewrite the contract to create duties that do not otherwise exist. *Ward's Equip.*, 493 S.E.2d at 520.

Plaintiff has failed to allege any contractual duties that support its claim for breach of good faith and fair dealing, or any facts from which this Court could plausibly infer that Anthem's allegedly wrongful actions generate a cause of action beyond Plaintiff's breach of contract claim. Accordingly, Plaintiff has failed to state a claim for breach of good faith and fair dealing, and this cause of action should be dismissed.

### C. Plaintiff fails to state a claim for breach of fiduciary duty.

Virginia law recognizes a breach of fiduciary duty arising in tort. *See Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293, 295 (Va. 2007). However, the law of torts "provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property." *Filak v. George*, 594 S.E.2d 610, 618 (Va. 2004). "[I]n order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, ***not*** one existing between the parties solely by virtue of the contract.'" *Augusta Mut. Ins. Co*, 645 S.E.2d at 293 (citation omitted) (emphasis added); *see, e.g., MCR Fed., LLC v. JB&A, Inc.*, 808 S.E.2d 186, 194 (Va. 2017) (plaintiff had no tort claim where duty existed solely because of contractual relationship between parties). Indeed, the Virginia Supreme Court has repeatedly refused to condone plaintiffs' attempts "to turn what was actually a breach of contract claim into actionable tort claims." *Augusta Mut. Ins. Co*, 645 S.E.2d at 293, 295; *see also MCR Fed., LLC*, 808 S.E.2d at 194.

Here, the entirety of Plaintiff's alleged breach of fiduciary duty claim under Virginia law is based on the contractual relationship between Plaintiff and Anthem. The Complaint roots Anthem's alleged fiduciary duty in a "relationship of trust and confidence" based on Plaintiff's assignment of "significant discretion to [Anthem] to spend Plan monies." Compl. ¶¶ 128–129. This assignment, of course, was a contractual negotiation between the parties, executed through the ASA. Plaintiff has failed to state any basis for a fiduciary duty outside of the ASA. *Cf. MCR*

*Fed., LLC*, 808 S.E.2d at 193–94 (plaintiff could not recover in tort where it failed to demonstrate that defendant breached a statutory or common law duty).  And any attempt to do so would be an invalid effort to stretch an already baseless breach of contract claim into actionable tort claims.  *See Augusta Mut. Ins. Co*, 645 S.E.2d at 293, 295.  Accordingly, Plaintiff has failed to state a claim for breach of fiduciary duty.

## **CONCLUSION**

For the foregoing reasons, Anthem respectfully requests that the Court grant its motion to dismiss Plaintiff's claims.


Dated:  March 31, 2023                          Respectfully submitted,

*/s/ Christopher W. Bascom*

Hugh M. Fain, III (VA Bar No. 26494)
John M. Erbach (VA Bar No. 76695)
Christopher W. Bascom (VA Bar No. 87302)
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA 23219
Telephone: (804) 697-2040
Fax: (804) 697-2140
hfain@spottsfain.com
jerbach@spottsfain.com
cbascom@spottsfain.com

E. Desmond Hogan (pro hac motion forthcoming)
Briana L. Black (pro hac motion forthcoming)
W. David Maxwell (pro hac motion forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
desmond.hogan@hoganlovells.com
briana.black@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Defendant*

*Anthem Health Plans of Virginia, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on March 31, 2023.

*/s/ Christopher W. Bascom*