**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| OWENS & MINOR, INC. and OWENS & MINOR FLEXIBLE BENEFITS PLAN,<br><br>        Plaintiff,<br><br>   v.<br><br>ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD<br><br>        Defendant. | Civil Action No.: 3:23-cv-00115-REP |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

    I.    Plaintiff Fails to State a Claim for Violation of ERISA .......................................2

        A.    ERISA's Substantive Duties Do Not Imply a Duty Owed By Anthem to Provide Claims Data Without Any Conditions............................................3

        B    Plaintiff Has Not Alleged a Breach of Any Other ERISA Provision. .........7

    II.    Plaintiff Lacks Standing Because It Fails to Allege Plausible Harm Related to the Conduct Alleged in the Complaint..............................................................10

    III.    Each of Plaintiff's State Law Causes of Actions Fails to State a Claim............16

    IV.    Purported Factual Disputes Are Not Material To Anthem's Grounds for Dismissal.........................................................................................................20

CONCLUSION......................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acheson Hotels, LLC v. Laufer*,
    143 S. Ct. 1053 (2023) ....................................................................................14

*Am. Psychiatric Assoc. v. Anthem Health Plans*,
    50 F. Supp. 3d 157 (D. Conn. 2014) ................................................................9

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
    579 F. Supp. 3d 1133 (N.D. Cal. 2022) .........................................................13

*Anweiler v. Am. Elec. Power Serv. Corp.*,
    3. F.3d 986 (7th Cir. 1993) ...............................................................................3

*Augusta Mut. Ins. Co. v. Mason*,
    645 S.E.2d 290 (Va. 2007) ........................................................................19, 20

*Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*,
    262 F. App'x 556 (4th Cir. 2008) .....................................................................9

*Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, LP,
    235 F. Supp. 2d 485 (E.D. Va. 2002) .............................................................16

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*,
    2022 WL 4538213 (S.D.N.Y. Sept. 27, 2022) .................................................7

*Charles E. Brauer Co., Inc. v. Nations Bank of Virginia, N.A.*,
    466 S.E.2d 382 (Va. 1996) ........................................................................17, 18

*CIC-TOC Pension Plan v. Weyerhaeuser Co.*,
    911 F. Supp. 2d 1088 (D. Or. 2012) ................................................................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................12

*Cortez-Melton v. Cap. One Fin. Corp.*,
    2021 WL 771754 (E.D. Va. Feb. 26, 2021) ....................................................16

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ............................................................................................6

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) .......................................................................8, 13

*DeLuca v. Blue Cross Blue Shield of Mich.*,
  628 F.3d 743 (6th Cir. 2010) ................................................9

*Denning v. Bond Pharmacy, Inc.*,
  50 F.4th 445 (5th Cir. 2022) ................................................14

*Evans Construction Servs. L.L.C. v Ox Builders, LLC*,
  2021 WL 8314543 (Va. Cir. Ct. Apr. 6, 2021)..........................19

*Faircloth v. Lundy Packing Co.*,
  91 F.3d 648 (4th Cir. 1996) ................................................2, 4

*Feather v. SSM Health*,
  2018 WL 3536613 (E.D. Mo. July 23, 2018) ..........................13

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*,
  93 F.3d 1171 (3d Cir. 1996)................................................3

*Glennborough Homeowners Assn. v United States Postal Serv.*,
  21 F.4th 410 (6th Cir 2021) ................................................15

*Gordon v. CIGNA Corp.*,
  890 F.3d 463 (4th Cir. 2018) ................................................7

*Griffin v. TeamCare*,
  909 F.3d 842 (7th Cir. 2018) ................................................5

*Griggs v. E.I. DuPont de Nemours & Co*
  237 F.3d 371 (4th Cir. 2001) ................................................3

*Harmon v. Shell Oil Co.*,
  2021 WL 1232694 (S.D. Tex. Mar. 30, 2021)..........................7

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*,
  642 F.3d 466 (4th Cir. 2011) ................................................7

*Helton v. AT & T, Inc.*,
  805 F. Supp. 2d 234 (E.D. Va. 2011) ...................................3

*Hill v. Alstom Power, Inc.*,
  2013 WL 6408416 (E.D. Va. Dec. 6, 2013) ..........................16

*In re Express Scripts/Anthem ERISA Litig.*,
  285 F. Supp. 3d 655 (S.D.N.Y. 2018)...................................9

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  312 F. Supp. 2d 1165 (D. Minn. 2004)................................3, 4

*Jarvis v. Oaklan-Macomb Obstetric & Gynecology, P.C.*,
    2022 WL 1177165 (E.D. Mich. Apr. 20, 2022)..................................................................17

*Lafarge N. Am., Inc. v State St. Bank & Tr. Co.*,
    2008 WL 4534185 (E.D. Va. Oct. 6, 2008) ........................................................................4

*Laufer v. Naranda Hotels, LLC*,
    60 F.4th 156 (4th Cir. 2023) ............................................................................................14

*Lee v. Verizon Commc'ns, Inc.*,
    837 F.3d 523 (5th Cir. 2016) ............................................................................................12

*LMP Holdings LLC v. PLY Enterprises LLC*,
    2012 WL 4344302 (E.D. V.A. Sep. 21, 2012)..............................................................16, 17

*Mahoney v. Nations Bank of Virginia, N.A.*,
    455 S.E.2d 5 (Va. 1995).....................................................................................................18

*Mitchell v. Blue Cross Blue Shield of N. Dakota*,
    953 F.3d 529 (8th Cir. 2020) ............................................................................................15

*Mondry v. Am. Family Mut. Ins. Co.*,
    557 F.3d 781 (7th Cir. 2009) ..........................................................................................4, 5

*Morris v. Gen. Info. Servs., Inc.*,
    2018 WL 4609943 (E.D. Va. Sept. 25, 2018).....................................................................15

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)............................................................................................................8

*Pender v. Bank of Am. Corp.*,
    788 F.3d 354 (4th Cir. 2015) ............................................................................................13

*Peters v. Aetna Inc.*,
    2 F.4th 199 (4th Cir. 2021) ..............................................................................................13

*Plyler v. Moore*,
    100 F.3d 365 (4th Cir. 1996) ............................................................................................6

*Rose v. Centra Health, Inc.*,
    2017 WL 3392494 (W.D. Va. Aug. 7, 2017) ....................................................................16

*Springer v. Cleveland Clinic Emp. Health Plan Total Care*,
    900 F.3d 284 (6th Cir. 2018) ............................................................................................15

*Thomas v. FTS USA, LLC*
    193 F. Supp. 3d 623 (E.D.Va. 2016) ................................................................................15

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021)......................................................................................12, 14

*Ward's Equip., Inc. v. New Holland N. Am., Inc.,*
  493 S.E. 2d 516 (Va. 1997)........................................................................................17

*Winzeler v. Sanchez,*
  2015 WL 12645001 (E.D.Va. July 28, 2015) .........................................................19

**Statutes**

29 U.S.C. § 1104.................................................................................................2, 7, 9, 10

29 U.S.C. § 1105...........................................................................................................4

29 U.S.C. § 1185m..............................................................................................2, 6, 7, 20

29 U.S.C. § 1024........................................................................................................2, 5

**Regulations**

29 C.F.R. § 2590.715-2715A3................................................................................12

## <u>INTRODUCTION</u>

Plaintiff's Opposition ("Opp.") throws up a bunch of smoke in hopes that the Court will conclude that where there is smoke there must be fire.  Attempting to save its deficient ERISA claim, Plaintiff points to eighteen scattered provisions of ERISA and related regulations—none of which specify the legal duty that Plaintiff contends should apply to Anthem: an absolute duty to disclose claims data, free of any reasonable conditions.  *See* Opp. at xi-xii; *infra* Section I.  Plaintiff similarly offers multiple theories of Article III standing, all of which are premised on a factual scenario in which Anthem completely denied Plaintiff all claims data for purposes of monitoring Anthem's performance.  *See* Opp. at 5-14.  But those are not the facts actually alleged in the Complaint; as alleged, Anthem agreed to provide claims data to Plaintiff, and the dispute in this case boils down to a disagreement over certain reasonable conditions for that production.  *See*, *e.g.*, Compl. ¶ 51.  Plaintiff fails to allege any plausible injury-in-fact caused by those conditions. *See infra* Section II.  Finally, Plaintiff points to an array of inapposite cases to try to rescue its state-law claims, Opp. at 27-30, ignoring clear authority showing that Plaintiff has failed to adequately plead claims of breach of contract, specific performance, good faith and fair dealing, or a breach of fiduciary duty.  *See infra* Section III.

At bottom, Plaintiff's Opposition cannot overcome the fundamental flaws in Plaintiff's Complaint.  This case is not about ERISA fiduciary duties.  It is a technical dispute under a contract negotiated between two sophisticated entities.  There is no plausible allegation that this dispute has caused an injury-in-fact that rises to the level needed for a federal court to get involved.  And Plaintiff's alternative state-law claims are improperly pled or inapplicable.  The Court should dismiss Plaintiff's complaint entirely and deny the requested leave to amend.[1]

---

[1] Plaintiff does not point to any facts that if added to an amended complaint would cure the fundamental deficiencies identified in Anthem's Motion.

## ARGUMENT

**I.**     **Plaintiff Fails to State a Claim for Violation of ERISA.**

Plaintiff is correct that ERISA sets out significant rules and obligations for Plans and their fiduciaries. Opp. at 16. But Plaintiff is wrong about what that means. ERISA Section 724, 29 U.S.C. § 1185m, imposes obligations on Plaintiff, not Anthem. Mot. at 10-14. And, ERISA's detailed rules and obligations (and that some have foundations in trust law) do not give courts license to create additional rules; to the contrary, courts have repeatedly declined to read in additional specific duties that are not already expressed in ERISA's detailed provisions. *Id.* at 14-17. Here, Plaintiff concedes, as it must, that while ERISA Section 524, 29 U.S.C. § 1024 establishes specific disclosure requirements for a plan administrator to a plan participant, no provision of ERISA or related regulation establishes the data disclosure duty for a service provider to the Plan that Plaintiff seeks here.[2] *See* Opp. at 17. Plaintiff likewise admits that Fourth Circuit law clearly establishes that courts may not use ERISA's general fiduciary duty provisions under 29 U.S.C. § 1104 as the source for broader ERISA disclosure requirements than what is required by narrower, more specific disclosure provisions expressly set out in ERISA. *See id.* at 23; *Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 657 (4th Cir. 1996). Rhetoric that such ERISA duties are the "highest known to the law" (*see* Opp. at 9, 16) does not change this fundamental interpretive principle. In the absence of any ERISA provision prohibiting Anthem from adhering to certain conditions in the parties' contract before providing claims data, Plaintiff cannot state a claim under ERISA. No attempts to circumvent this basic point can save Plaintiff's claim.

---

[2] It is not just Section 1024. Indeed, the number and variety of specific provisions requiring disclosure (as cited by Plaintiff) where Congress or an agency determined that disclosure was necessary demonstrates unequivocally that Congress and administrative agencies know how to impose such requirements if they want to. *See* Opp. at 11 (citing regulations and statutory provisions requiring certain disclosures).

### A. ERISA's Substantive Duties Do Not Imply a Duty Owed By Anthem to Provide Claims Data Without Any Conditions.

First, Plaintiff appeals to "overarching legal principles" such as that ERISA was intended to "expand" on the protections in the common law of trusts. Opp. at 16-18. Plaintiff also relies on out-of-Circuit authority to suggest that cases analyzing fiduciary-to-plan disclosures have read in broad disclosure requirements. *Id*. at 17 (citing *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio,* 982 F.2d 1031, 1036 (6th Cir. 1993) and *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.,* 93 F.3d 1171, 1176-77, 1181-82 (3d Cir. 1996)). *Glaziers* is distinguishable because the court held that the defendant had reason to know that the failure to disclose suspicions about an employee's integrity could be harmful to the Plan. *Id*. at 1180. In fact, nearly all the cases Plaintiff cites in support of some broad duty of disclosure actually had limited holdings emphasizing disclosure duties apply where there is a factual basis to allege that "silence might be harmful." *See Griggs v. E.I. DuPont de Nemours & Co*., 237 F.3d 371, 373-75, 379, 380, 383-84 (4th Cir. 2001) (same); *Helton v. AT & T, Inc.,* 805 F. Supp. 2d 234, 248 (E.D. Va. 2011), *aff'd*, 709 F.3d 343 (4th Cir. 2013) (same); *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1176 (D. Minn. 2004) ("duty to . . . not affirmatively miscommunicate or mislead plan participants") (citation omitted). [3]

---

[3] Even the case asserting the "strongest assertions of an affirmative duty to disclose" emphasizes only a duty to "communicate material facts affecting the interests of beneficiaries." *In re Xcel Energy*, 312 F. Supp. at 1177 (citing *Anweiler v. Am. Elec. Power Serv. Corp.*, 3. F.3d 986, 991 (7th Cir. 1993). Plaintiff points to this "material information" standard (Opp. at 20), but as is clear from this case, by "material facts" the court meant information without which participants would be "materially misled" such that *Anweiler*'s holding is really no broader than any of the other cases to which Plaintiff cites. *See Anweiler*, 3. F.3d at 991 (finding breach based on failure to inform that reimbursement agreement was not required and revocable at will).

Tellingly, Plaintiff has cited no case finding a broad, absolute duty to disclose information to the Plan without conditions. *Libbey-Owens-Ford's* holding, to the extent it did imply any such duty, has been explicitly rejected by courts in the Fourth Circuit. *See Lafarge N. Am., Inc. v State St. Bank & Tr. Co.*, 2008 WL 4534185 (E.D. Va. Oct. 6, 2008), *on recons.*, *sub nom. Lafarge N. Am., Inc. v State St. Bank & Tr. Co.*, 2008 WL 5101807 (E.D. Va. Nov. 25, 2008) (reversed on unrelated grounds).   In particular, *Lafarge* rejected *Libbey-Owens-Ford*'s attempts to imply a generalized duty to furnish financial information to the principal of a plan upon demand due to alleged principles of trust law, the very same argument Plaintiff advances here: "Based on the . . . reasoning in *Faircloth*, the Court finds that a trustee does ***not*** have additional disclosure obligations to employers stemming from its status as a fiduciary under ERISA and the basic principles of trust law." *Lafarge,* 2008 WL 4534185, at *7 (emphasis added).

Second, again invoking principles of trust law and 29 U.S.C. § 1105, Plaintiff claims that OMI's duty to monitor its service providers implies that Anthem as a service provider is required under ERISA to provide OMI with any and all claims data it seeks. *See* Opp. at 18-19.  Plaintiff also invokes a "reciprocal duty to cooperate." *Id.* at 18.  But as Plaintiff's own case citation makes clear, the duty to monitor (and therefore correspondingly, any such reciprocal duty of cooperation) is "narrow." *See In re Xcel Energy*, 312 F. Supp. at 1176.  And, Plaintiff cites no authority that the duty to cooperate (if it exists at all as an independent duty under ERISA), requires Anthem to forego its contractually negotiated rights—requiring confidentiality and use agreements from its customer group health plan prior to providing the Plan with Anthem proprietary information in claims data related to the Plan.  In fact, courts have not generally seen fit to impose duties of cooperation beyond those set forth in plan documents.  *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 793-94, 797, 799-802 (7th Cir. 2009) ("If the contract between American Family

4

and CIGNA did not give American Family the right to insist on the production of internal documents such as the BIRT and CRT, this was certainly a right that American Family *could have bargained for*.") (emphasis added).

Importantly, the Opposition repeats conclusory assertions that provisions available under the ASA to monitor Anthem are not sufficient.  Plaintiff characterizes its audit rights as an "empty alternative" arguing that Anthem has "unfettered discretion under the ASA to simply disregard audit results" and that Anthem "unilaterally controls the scope and effectiveness of audits."  Opp. at 26.  As support, Plaintiff cites to paragraphs 79-80 of the Complaint, but those provisions deal with Anthem's discretion over whether or not to pursue a recovery of an alleged overpayment; they say nothing of whether an audit is sufficient to discover misconduct or otherwise fulfill a duty to monitor.  *See* Compl. ¶ 80 ("exercises extensive control over whether to even pursue recoveries and over the amount of those recovered monies that return to the Plan").  The Complaint is devoid of any allegations of fact that the claims audits under those same contractual rights that Plaintiff relied on for years to monitor the plan were somehow inadequate.  *See* Mot. at 22.

Third, Plaintiff argues that caselaw addressing *administrator-to-participant* disclosures supports unconditional disclosure of claims data by a *service provider to the Plan*, reasoning that because documents like methodologies and formulas must be produced by the Plaintiff to its plan participants under 29 U.S.C. § 1024, Anthem cannot withhold that information from the Plan. Those holdings were limited to where the defendants explicitly relied on certain documents in denying plan benefits, thereby transforming them into "plan documents."  *See Mondry*, 557 F.3d at 793 (finding that because claims administrator relied on internal documents like BIRT and CRT to deny benefits, those documents needed to be disclosed to the beneficiary); *Griffin v. TeamCare*, 909 F.3d 842, 847 (7th Cir. 2018) (citing *Mondry* and relying on the same theory to find duty to

5

disclose fee schedules).  No such reliance is at issue here.  Indeed, claims data reflects the end result of claims adjudications; it is not relied on in determining benefits to begin with.

Moreover, courts have acknowledged that the limited disclosure duties in ERISA may mean that participants do not get access to all of the information they want or need.  Mot. at 14-16 (discussing cases).  As the Supreme Court stated, ERISA's disclosure scheme "may not be a foolproof informational scheme" but "it is the scheme that Congress devised."  *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 84 (1995).  That Congress chose to protect plan participants in this narrow way—which Congress understood would leave gaps—cannot imply a decision to saddle a service provider with far broader disclosure duties to employer plan sponsors—disclosure untethered to the agreements those sophisticated companies freely negotiated.

Fourth, Plaintiff's proffered interpretation of ERISA Section 724, codified at 29 U.S.C. § 1185m, is also unfounded.  Plaintiff's contention that Section 1185m "more reasonably imposes a duty on . . . Anthem," Opp. at 23, cannot be squared with the statutory language which prevents the "group health plan" from entering into an agreement with a "health care provider . . . third-party administrator, or ***other service provider*** . . . ."  29 U.S.C. § 1185m(a)(1) (emphasis added).  It would be nonsensical for Congress to write that a third-party administrator cannot enter into an agreement with *itself.  See generally Plyler v. Moore,* 100 F.3d 365, 370 (4th Cir. 1996) (rejecting construction of a statute that "renders the statute meaningless or nonsensical").  Plaintiff also suggests, without any authority, that Section 1185m "rejected the proposition that the information Anthem seeks is 'proprietary' or 'confidential.'"  Opp. at 23.  But Section 724 explicitly contains two carve-outs permitting (1) "reasonable restrictions" on the public disclosure of information, and (2) "limits" on access to "data as permitted" under HIPAA regulations and other privacy laws. 29 U.S.C. § 1185m (a)(2), (4).  The fact that the statute addresses public disclosure restrictions and

6

privacy law compliance in separate provisions means Congress intended these provisions to apply to different types of information. *See Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 472 (4th Cir. 2011) (courts should not "interpret a statutory provision so as to render superfluous other provisions"). Therefore, Section 724(a)(2) cannot reasonably be interpreted as being limited to personal health information or other information protected by privacy laws addressed in Section 724(a)(4). Instead, it must be read as permitting a contract to place reasonable conditions on disclosure of information that a service provider has a business interest in, or other legal obligation to keep out of the public domain.[4]

### B. Plaintiff Has Not Alleged a Breach of Any Other ERISA Provision.

Plaintiff's argument that claims data is a "plan asset" which Anthem dealt with for its own interest or its own account, in violation of Section 1104 or 1106 (Opp. at 21, 25) is unfounded. The scope of "plan assets" is based on "ordinary notions of property rights." *Gordon v. CIGNA Corp.*, 890 F.3d 463, 472 (4th Cir. 2018). Every court to have considered the issue has found that claims data does not meet that definition. *See, e.g., Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 2022 WL 4538213, at *17 (S.D.N.Y. Sept. 27, 2022) ("[M]ultiple courts have found that participant information and the like does not fall under the definition of 'plan assets.'").[5]

But the Court does not need to reach this issue to conclude that the Complaint fails to state a claim under ERISA, because even taking as true that claims data could be construed as "plan assets" and that Anthem refused to provide the requested claims data to Plaintiff (both of which

---

[4] Plaintiff is also wrong that Section 1185m "voids any agreement" that allows a TPA to require conditions to provide information. *See* Opp. at 22. Congress could have drafted the provision that way, but instead it only prohibited group health plans from "entering" into such an agreement, yet further confirmation that Congress was more targeted in its approach. Mot. at 12, 14 (citing cases).

[5] *See also Harmon v. Shell Oil Co.*, 2021 WL 1232694, at *3 (S.D. Tex. Mar. 30, 2021) (finding claims data was not "plan assets"). Notably, the Opposition cites no case law in support of its assertion that the requested claims data is a Plan asset.

Anthem disputes), Plaintiff has not alleged that Anthem engaged in any "transaction" with the claims data. *See* Mot. at 16. Plaintiff attempts to sidestep clear Fourth Circuit law finding that § 1106(b)(1) liability requires an affirmative act in the nature of a transaction. *David v. Alphin,* 704 F.3d 327, 340 (4th Cir. 2013) ("common understanding of the word 'transaction' implies that an affirmative action is required"). Plaintiff's theory that "Anthem unlawfully retained Plan assets" and thereby "transferred" the claims data runs afoul of *Alphin* and is wholly inconsistent with the plain meaning of "transaction." And, in other ERISA contexts, courts have concluded that a transaction "is not simply any and all business conduct" but rather "connotes *conducting*, rather than *ceasing*, business and connotes an event involving more than one party." *CIC-TOC Pension Plan v. Weyerhaeuser Co.*, 911 F. Supp. 2d 1088, 1095 (D. Or. 2012) (finding cessation of covered operations was not a "transaction" within ERISA § 4212(c) because it was a *unilateral* act). Anthem created the Data in the course of adjudicating claims. Plaintiff cannot contort what is, at most, an alleged omission—failure to provide the claims data—into some sort of active "transfer" from the Plan to Anthem or Anthem to itself. Moreover, neither the Complaint nor the Opposition plausibly allege that Anthem dealt with the claims data in "its own interest or for [its] own account." *See* Mot. at 17. Plaintiff's Opposition does not, and cannot, point to any allegations of fact in the Complaint to support such an inference.

Plaintiff's assertion that Anthem violated ERISA by "elevating its commercial interests above" and not acting "exclusively" for the Plan (Opp. at 20-21) is also misplaced. A fiduciary can wear "two hats" and when wearing its non-fiduciary hat, ERISA duties do not attach. *See generally Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Anthem develops its provider networks and claims systems for all of its lines of business, not just for Plaintiff's Plan. Compl. ¶¶ 3, 71. Thus, these functions involve "business decisions," and Anthem can protect these proprietary

aspects of its business without running afoul of ERISA.  *Cf. e.g., Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 169-70 (D. Conn. 2014) (holding that defendant's "setting of reimbursement rates" are "business decisions" that do not trigger fiduciary duties).[6]

As an alternative basis for ERISA liability, Plaintiff contends that withholding data breached the ASA and thus is a violation of 29 U.S.C. § 1104(a)(1)(D)'s requirement that a fiduciary discharge its duties consistent with plan terms.  As an initial matter, in listing alleged violations of ERISA in the Complaint, Plaintiff did not reference the ASA at all.  *See* Compl. ¶¶ 99-100.  This new theory should therefore be disregarded.  *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("A Plaintiff may not amend his complaint through arguments in his brief in opposition to a motion . . . .").

More fundamentally, Plaintiff's reading of the ASA is untethered from the text and omits key words.  For example, ignoring that the ASA explicitly labels, amongst other things, "Information about Anthem's Provider networks, Provider negotiated fees, Provider discounts and Provider contract terms" as "Anthem's Proprietary Information."  *See* Compl. Ex. A at 3.  Plaintiff argues that the claims data fits the narrow definition of Employer's Proprietary Information, which pertains solely to the "systems, procedures, methodologies, and practices used by Employer to run its operations and the Plan" because so long as it purports to "use" the claims data to "run the Plan," it fits the definition.  *See* Opp. at 22.  This reading is unreasonable because it would swallow information expressly defined as "*Anthem's* Proprietary Information."  Plaintiff also selectively quotes the ASA to imply that because the ASA permits Plaintiff to "use or disclose" Anthem's

---

[6] *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 746-47 (6th Cir. 2010) (holding that negotiating provider contracts that are "generally applicable," rather than "directly associated with the benefits plan at issue," is not a fiduciary function); *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 681–84 (S.D.N.Y. 2018) (same).

Proprietary Information "for the purpose of administering the Plan," it is entitled to that information. *Id*. But the provision reads in full: "Employer shall use and disclose Anthem's information *solely* for the purpose of administering the Plan." Compl. Ex. A at Art. 10 (emphasis added). As is clear from the full quotation, this provision is intended to *limit* Plaintiff's ability to use Anthem's proprietary information, not to endow Plaintiff with the right to demand that Anthem produce that information without regard to the ASA's other provisions. Plaintiff's interpretation also ignores other provisions the parties agreed to in the ASA governing claims reports and claims audits. As with Plaintiff's Section 1104 arguments, this is another impermissible attempt to transform a general duty under ERISA (compliance with the ASA terms) into a disclosure obligation under ERISA which does not exist in the statute or in the ASA. At most, Plaintiff's allegations belie a dispute about the parties' contractual rights and obligations, *not* ERISA obligations.

**II.     Plaintiff Lacks Standing Because It Fails to Allege Plausible Harm Related to the Conduct Alleged in the Complaint.**

Plaintiff lacks standing to pursue any of its causes of action because Plaintiff has only alleged a bare statutory or contract violation without any resulting concrete injury. *See* Mot. at 18-22. In its Opposition, Plaintiff offers a host of reasons why Anthem has purportedly caused Plaintiff to suffer an injury in fact "[b]y withholding the Data." Opp. at 7; *see also id*. at 8 (injury caused "[b]y withholding the Data"); *id.* at 10 ("Injury Based on Anthem Withholding Information"); *id*. at 13 (injuries caused "[b]y withholding the Data"). But withholding data is not the actual alleged basis for Plaintiff's claims in this case. The Complaint states that Anthem agreed to produce a large amount of claims data for Plaintiff to use for its purported purpose of monitoring Anthem. *Compare* Compl. ¶ 46 *with* ¶ 51 (Anthem agreed to produce data showing allowed, charges, billed charges, excluded charges, and BlueCard data); *see also* Opp. at 1. And Plaintiff

does not dispute that Plaintiff and any third-parties receiving the claims data must sign a confidentiality agreement. Opp. at 6 (Plaintiff "readily agreed" to confidentiality protections). Rather, Plaintiff's Opposition shows that the Complaint boils down to a single condition on Anthem's production of the claims data with which Plaintiff disagrees: an "as-is" clause in Anthem's proposed confidentiality agreement[7] that recognizes massive amounts of automatically generated claims data may occasionally contain errors that do not reflect the actual facts of a particular reimbursement claim adjudication (*e.g.* a missing co-pay figure). All of Plaintiff's arguments about injury-in-fact caused by a ***complete*** denial of any claims data, therefore, are beside the point and should be disregarded. *See* Opp. at 7-15. Standing cannot be based on hypotheticals that are not actually alleged in this case. Plaintiff fails to allege ***any*** plausible injury that it may suffer if it received the claims data subject to the proposed "as-is" clause or other ASA requirements.[8] That should end the standing inquiry and result in dismissal.

Plaintiff's failure to identify any plausible harm connected to the disputed condition for receiving the claims data is not surprising. Regardless of the "as-is" clause, with the claims data in hand, Plaintiff could perform all of the analysis that it allegedly wants to conduct; indeed, it could monitor Anthem with much less. *See supra* Section I.A. If Plaintiff identified any issues, Plaintiff would have several options to remedy the situation, for example: (1) discuss any apparent overpayments with Anthem and request further investigation; (2) sue Anthem for allegedly overpayment claims, assuming other elements of a legal claim were met; or (3) terminate Anthem

---

[7] *See* Compl. ¶ 55 (disputing as-is clause releasing Anthem from liability "for any erroneous, inaccurate, or incomplete Information" in the Data); Opp. at 6-7 (arguing that the "as-is" clause was the sticking point).

[8] To the extent Plaintiff attempts to revise its allegations to dispute other conditions for receiving the claims data (e.g. the confidentiality agreement that it agreed to sign), its Complaint suffers the same defect: Plaintiff has not and cannot allege any injury-in-fact tied to those conditions.

as a service provider.  On its face, nothing in the "as-is" clause prevents Plaintiff from taking any of those steps.  And, even if it did, Plaintiff can only speculate that that it ***could*** face liability as a result of monitoring the plan with the claims data subject to an "as-is" clause.  *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 (2013) (a "speculative chain of possibilities" does not establish standing).[9]  Plaintiff thus fails to plausibly allege concrete injury caused by the "as-is" clause.

Plaintiff is therefore left with a bare (and erroneous) allegation that Anthem's "as-is" clause violates ERISA.  But as discussed in Anthem's Motion, a statutory violation alone is not enough to confer standing.  Even if ERISA disclosure responsibilities were somehow implicated (which they are not), Plaintiff has cited no post-*Spokeo or TransUnion* authority that remotely supports finding that a mere allegation that ERISA disclosure requirements were violated, alone, is a "concrete" injury.  And *TransUnion* has cautioned that "*Spokeo* is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  None of the cases cited in the Opposition fix this basic flaw in Plaintiff's argument.

**Trust Law**: Plaintiff first attempts to analogize its claims to those that a trustee might bring against a co-trustee.  Opp. at 12-13.  That analogy has been rejected before.  *See*, *e.g.*, *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523 (5th Cir. 2016) (in case involving alleged breach of ERISA disclosure duties, rejecting common-law trust analogy and holding that "a *de facto* injury is not alleged by reference to fiduciary misconduct under ERISA alone").[10]  The Fourth Circuit likewise

_____

[9] Plaintiff's suggestion that it needs claims data free of the as-is clause to comply with Transparency in Coverage Rules, *e.g.*, 29 C.F.R. § 2590.715-2715A3 (Opp. at 11, n.18), misses the mark.  Those regulations only require disclosure of in-network and out-of-network rates, not the records of individual claims adjudications that Plaintiff seeks here.  Anthem is subject to the same regulations and publicly posts overall rate information separately.

[10] *Lee* also dispensed with the Plaintiff's contention that the court must find standing based solely on Congress' goals in enacting a statute. *See id*. at 530.

found the analogy to trust law insufficient to confer standing. *David v. Alphin*, 704 F.3d 327, 343 (4th Cir. 2013) ("Nor, in our view, does trust law, or the deprivation of a statutory right under ERISA, give rise to an Article III injury-in-fact."). And the invocation of the trustee's ability to pursue an equitable accounting even without proof of monetary loss falls flat, especially since the Complaint's Prayer for Relief does not seek an accounting. Moreover, the opinions in *Pender v. Bank of Am. Corp.,* 788 F.3d 354, 367 n.11 (4th Cir. 2015) and *Peters v. Aetna Inc.*, 2 F.4th 199, 220 (4th Cir. 2021), on which Plaintiff relies, are inapposite because both cases involved concrete injuries aside from an ERISA violation. *Pender*, 788 F.3d at 367 (holding plaintiff "suffered an individual loss, measured as the 'spread' or difference between the profit the [Bank] earned by investing the retained assets and the [amount] it paid to [them]"); *Peters*, 2 F.4th at 218 ("Peters contends that she paid more than the health care provider's Negotiated Charge as set by the Plan because she also paid Optum's administrative fee contained in the bundled rate").

**Informational Injury**: Plaintiff misconstrues the caselaw on standing as it pertains to informational injury. Opp. at 10-12. Notably, Plaintiff does not cite any cases holding that a deficient disclosure under ERISA is cognizable as a concrete injury for standing purposes. Several courts in the Fourth Circuit and beyond have found that deficient ERISA disclosures do not confer standing absent allegations of "adverse effects." For instance, in *Anderson v. Intel Corp. Inv. Pol'y Comm.,* 579 F. Supp. 3d 1133, 1160 (N.D. Cal. 2022), the court dismissed on standing grounds plaintiffs' claims that the investment committee for the plan breached its fiduciary duties due to defective disclosures, holding "[p]laintiffs are arguing that they need not plead that they were injured by those disclosures or that those disclosures caused their injury." That argument does not hold water under United States Supreme Court case law." *Id.*; *see also Feather v. SSM Health*,

2018 WL 3536613 (E.D. Mo. July 23, 2018) (finding no standing based on alleged failure to provide actuarial and financial information).

Plaintiff cites *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 170 (4th Cir. 2023), a case about tester plaintiffs, for the argument that Plaintiff need not show "adverse effects" for an informational injury. But Plaintiff ignores *Laufer*'s recognition of *TransUnion*'s holding that informational injury may not exist absent adverse effects unless Plaintiff plausibly alleges that it did not receive *any* required information. *Id.* ("*TransUnion* is reconcilable with the earlier precedents, in that the Court expressly distinguished the informational injuries in *Public Citizen* and *Akins* (the 'fail[ure] to receive *any* required information') from the purported informational injury before it (receipt of the required information "*in the wrong format*")) (quoting *TransUnion*, 141 S. Ct. at 2214). Here, the Complaint does not allege that Anthem was unwilling to provide *any* of the requested claims data. *See, e.g.*, Compl. ¶ 51 (alleging that Anthem agreed to provide additional claims data elements that Plaintiff requested). Plaintiff has therefore not alleged a cognizable informational injury under *TransUnion* or *Laufer*.[11]

**Contract and Property Theories.** Plaintiff also attempts contract and property law analogues. Opp. at 13-14. It is not clear whether Plaintiff's contract theory allegedly applies solely to its state law contract claim or also its floundering ERISA claims. If it applies to the ERISA claim, as discussed above, Plaintiff's new theory of a contract-based ERISA violation is improper.

In any event, Plaintiff cites no cases in which the mere breach of an ERISA plan agreement, without plausible damages, has been held to allege an injury in fact.[12] The only Fourth Circuit

---

[11] The Supreme Court has recently granted certiorari to review the holding in *Laufer*. *See Acheson Hotels, LLC v. Laufer*, 143 S. Ct. 1053 (2023). Thus, should the Court find that Plaintiff's standing depends on the holding in that case, it should stay the case pending the Supreme Court's decision.
[12] The few ERISA cases that Plaintiff cites involved monetary injury. *Denning v. Bond Pharmacy,*

case cited by Plaintiff (not an ERISA case) is distinguishable because the plaintiff alleged facts from which the court could infer actual harm. *See Thomas v. FTS USA, LLC* 193 F. Supp. 3d 623, 636 (E.D. Va. 2016) (harm consisted of denial of continued employment and invasion of privacy); *see also Morris v. Gen. Info. Servs., Inc.*, 2018 WL 4609943 (E.D. Va. Sept. 25, 2018) (distinguishing *Thomas* based on allegations of actual harm). And even if a breach of contract alone could confer standing, that does not necessarily imply that a statutory violation based partially on an alleged breach of contract would be treated similarly. *See*, *e.g.*, *Glennborough Homeowners Assn. v U.S. Postal Serv.*, 21 F.4th 410, 416 (6th Cir 2021) (holding that under Supreme Court precedent, a plaintiff who sues to vindicate statutory rights "'in the nature of a contract' but otherwise suffers no monetary loss . . . lacks Article III standing for want of a concrete stake in the lawsuit") (citations omitted). Finally, because Plaintiff has not alleged a plausible breach of contract claim, *see infra* Section III, Plaintiff cannot demonstrate standing for its ERISA claim based on an alleged contractual injury.

Plaintiff's analogy to property-based causes of action also is unavailing. *See* Opp. at 13-14. The Opposition repeatedly asserts in conclusory terms that Plaintiff "owns" the claims data (at 14, 15-16), but, as noted above, every court to have considered the question has found that participants' claims data does *not* belong to the Plan. *See supra* Section I.A. Regardless, Plaintiff asserts the claims data belongs to the Plan because it is needed to monitor and carry out plan functions. *Id*. at 26. But that does not preclude the parties from agreeing, as the ASA provides, that the claims data contains Anthem's proprietary information and to certain conditions for

---

*Inc.,* 50 F.4th 445, 451 (5th Cir. 2022) (patient alleged pharmacy billed her insurer for unauthorized services); *Mitchell v. Blue Cross Blue Shield of N. Dakota,* 953 F.3d 529, 536 (8th Cir. 2020) (wrongful denial of plan *benefits* even if those benefits were assigned to a third party); *Springer v. Cleveland Clinic Emp. Health Plan Total Care,* 900 F.3d 284, 287 (6th Cir. 2018) (same).

providing claims data.  *E.g.*, Compl. Ex. A,  at 3.  And, as discussed, the Complaint does not

plausibly allege any injury-in-fact caused by those conditions.  *Supra* at Section II.

**III.**   **Each of Plaintiff's State Law Causes of Actions Fails to State a Claim.**

**Breach of Contract:**   Plaintiff's breach of contract claim is deficient, because Plaintiff

fails to allege a necessary element of the only relief it seeks—specific performance.  Plaintiff still

has not pointed to any factual allegation in the Complaint asserting, much less plausibly showing,

that remedies at law would be inadequate.  Nor has Plaintiff addressed authority cited in Anthem's

Motion holding that "[i]n Virginia, as in other states, specific performance is an equitable remedy

only available if there is no adequate remedy at law" and that "a complaint failing to allege that

there is no adequate remedy at law is fatally deficient."  *LMP Holdings LLC v. PLY Enters. LLC*,

2012 WL 4344302, at *5 (E.D.V.A. Sept. 21, 2012) (Payne, J.) (dismissing breach of contract

claim for specific performance on a 12(b)(6) motion).[13]

In response, Plaintiff points to Western District of Virginia cases indicating that where

multiple possible remedies are available for a claim, "Judges in the Western District of Virginia

have established a policy of not addressing remedies at the 12(b)(6) stage."  *Rose v. Centra Health,*

*Inc.*, 2017 WL 3392494, at *1, *11 (W.D. Va. Aug. 7, 2017) (declining to dismiss punitive

damages claim); *see also* Opp. at 27 (citing *Johnson v. Speedway, LLC*, 2021 WL 1662725, at *1

(W.D. Va. Apr. 28, 2021) (declining to dismiss emotional distress damages, punitive damages,

and attorneys' fees)).  Even if that policy applied in this Court, Plaintiff's breach of contract claim

should still be dismissed consistent with the language of Rule 12(b)(6)—allowing dismissal for

---

[13] *See also Hill v. Alstom Power, Inc.*, 2013 WL 6408416, at *1, *3-4 (E.D. Va. Dec. 6, 2013)
(dismissing request for specific performance, as well as requests for punitive damages and
attorney's fees); *see also Cortez-Melton v. Cap. One Fin. Corp.*, 2021 WL 771754, at *6 (E.D. Va.
Feb. 26, 2021) (dismissing request for specific performance under Virginia law); *Beazer Homes*
*Corp. v. VMIF/Anden Southbridge Venture*, *LP*, 235 F. Supp. 2d 485, 493 (E.D. Va. 2002) (same).

"failure to state a claim upon which relief can be granted"—because Plaintiff failed to plead entitlement to *any* relief that the Court can grant.[14]  Unlike the cases that Plaintiff cites, there are no alternative remedies pled that could sustain Plaintiff's claim.[15]  As this Court did in *LMP Holdings LLC*, the Court should dismiss the breach of contract claim for specific performance here.  Separately, Plaintiff's breach of contract claims should be dismissed for failure to plead plausible injury as discussed above.  *See* Section II, *supra*; *see also* Mot. at 24.

**Implied Covenant of Good Faith and Fair Dealing.**  Plaintiff does not contest that under Virginia law, the implied covenant of good faith and fair dealing does not apply where a party exercises contractual rights—even if the exercise of those rights is arbitrary.  *See* Mot. at 26-27 (collecting cases); *see also Charles E. Brauer Co., v. Nations Bank of Virginia, N.A.*, 466 S.E.2d 382, 386 (Va. 1996) (no breach of implied duty of good faith where "arguably, the bank's conduct was arbitrary, but it was not dishonest").  The implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist."  *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E. 2d 516, 520 (Va. 1997).  And as discussed in Anthem's Motion (at 8-9, 26-27), Plaintiff is challenging Anthem's exercise of contractual rights negotiated between the parties.

---

[14]  The out-of-circuit cases that Plaintiff cites likewise confirm the discretionary nature of this policy and that it does not apply where Plaintiff cannot plead any entitlement to relief.  *See* Opp. at 27, n. 37 (citing *Pecan Trust v. Nexus RVs, LLC*, 2023 WL 346218, at *5 (N.D. Ind. Jan. 20, 2023) (observing that Rule 12(b)(6) does not "typically" challenge remedies)); *Jarvis v. Oaklan-Macomb Obstetric & Gynecology, P.C.*, 2022 WL 1177165, at *11-12 (E.D. Mich. Apr. 20, 2022) (citing *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2022) (dismissal is appropriate where "plaintiff wants the improper relief sought in the complaint or nothing" at all)).

[15]  Plaintiff admits that the Complaint does not seek declaratory judgment for the breach of contract count.  Opp. at 28, n. 39.  If the Court were to allow Plaintiff to amend its Complaint, and if Plaintiff were to add a request for declaratory judgment, Defendant would address at the appropriate time whether that remedy is adequately pled—including whether Plaintiff has plausibly alleged standing for a declaratory judgment.

Plaintiff asserts that Anthem's exercise of its contractual rights is nonetheless a violation because it was dishonest. Opp. at 29. But the only specific allegation that Plaintiff can identify to support this claim—a single paragraph in the Complaint—is conclusory and implausible. *Id.* (citing Compl. ¶ 101). As discussed above, there is absolutely no plausible alleged basis for Plaintiff's allegation "[o]n information and belief," that Anthem mismanaged funds, much less that it did so for its own self-interested purpose.

Alternatively, Plaintiff asserts that the alleged wrongdoing in the Complaint—producing claims data subject to certain conditions—was an exercise of discretion granted in the contract and that such discretion must be exercised in good faith. *Id*. But none of the contractual provisions that Plaintiff cites grant *discretion* over how and whether to produce claims data, as opposed to the *right* to impose certain conditions. *Id*. (citing Compl. ¶¶ 82 *et seq.*). For example, far from discretion to require third parties receiving claims data to follow confidentiality provisions, *see* Compl. ¶ 83, the parties' contract states that third-parties "shall enter into a confidentiality agreement with Anthem." Compl. Ex. A at Art. 11.b; *see also* Compl. ¶ 82 (citing Ex. A. at Art. 11.a, granting Anthem right to approve request for claims data beyond standard account reporting package and granting both parties rights to determine the format and content of such reports). These provisions are similar to those that Virginia courts have found to grant rights, not discretion, which are not subject to an implied duty of good faith. *See Charles E. Brauer Co.*, 66 S.E.2d. at 386 (exercise of right, not discretion, where a bank had a right to foreclose on inventory or reduce its claim to judgment, and decided to reduce its claim to judgment); *Mahoney v. Nations Bank of Virginia, N.A.*, 455 S.E.2d 5, 7 (Va. 1995) (exercise of right, not discretion, where bank decided to withhold release of collateral). Because Plaintiff's good faith and fair dealing claim seeks to rewrite the contractual rights to which the parties agreed, it should be dismissed.

**Breach of fiduciary duty under Virginia common law.**  As Plaintiff concedes, to state a tort claim such as breach of fiduciary duty, a party must identify a duty that would exist absent the parties' contract.  Opp. at 29; *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007) (plaintiff must identify a duty other than "one existing between the parties *solely by virtue of the contract*" (emphasis added)).  Common law duties that would not exist "[b]ut for the existence of the [contract]" are insufficient.  *Id.* at 294-95 (no claim for breach of common law agency duties that would not exist but for a contract); *accord Evans Constr. Servs. L.L.C. v Ox Builders, LLC*, 2021 WL 8314543, at *4 (Va. Cir. Ct. Apr. 6, 2021) (finding duties that apply to third-parties to a contract, such as duty not to interfere with contractual relations, may support a tort claim).

As Plaintiff's breach of contract claim confirms, all of the alleged duties here are based in the parties' contract and thus cannot support a separate fiduciary duty claim.  *See* Mot. at 28-29. In its Opposition, Plaintiff tries to invoke the statutory duties of a trustee as an independent source. *Id*. at 29-30.  But the statutory provisions that Plaintiff relies on address trusts for holding property created under state law.  *See id.* at 30 (citing VA. Code Ann. § 64.2-719 *et seq*.).  Nowhere in the Complaint does Plaintiff allege that any trust was created under state law or that Anthem was appointed a trustee, much less facts sufficient to show the legal elements of a trust.  *See*, *e.g.*, Compl. ¶¶ 128-29 (alleging a "relationship of trust and confidence" not the creation of a state-law trust).  Even if Plaintiff had plausibly alleged the creation of a trust, the parties' trust relationship would not exist "[b]ut for the existence of the [contract]."  *Augusta Mut. Ins. Co.*, 645 S.E.2d at 294.  Just as agency duties implied by a contractual relationship cannot support a separate tort claim, *id.*, trust duties that arise from the contractual relationship between Plaintiff and Anthem are insufficient.  *See also Winzeler v. Sanchez*, 2015 WL 12645001, at *8 (E.D. Va. July 28, 2015) (no fiduciary duty claim where "[b]ut for the existence of [the contract], neither [defendant] would

19

have owed any fiduciary duty to [plaintiff]").[16]  Plaintiff's breach of fiduciary duty claim should be dismissed.

## IV.    Purported Factual Disputes Are Not Material To Anthem's Grounds for Dismissal.

Plaintiff asserts that Anthem's Motion raises factual disputes which cannot be decided on a motion to dismiss or denies the Complaint's allegations, attaching a copy of the Motion with unexplained highlighted sections.  *See* Opp. at 3 & Ex. 1.  This is all smoke.  Indeed, many of the highlighted portions are direct quotes from the Complaint or the ASA attached to the Complaint; others are permissible legal arguments drawn from Plaintiff's alleged facts.[17]  In other highlighted portions, Anthem provides background in its Introduction and Statement of Facts regarding the ASA requirements and the mechanisms available to Plaintiff to monitor Anthem within the bounds of the ASA.  *See* Mot. at 1-5.  The Opposition fails to show how any of the purportedly disputed "facts" highlighted in Exhibit 1 would, if construed in Plaintiff's favor or ignored, cure the deficiencies that Anthem has identified in Plaintiff's Complaint.  They would not.

### CONCLUSION

Anthem respectfully requests that the Court grant its Motion to Dismiss Plaintiff's claims.

Dated:  May 15, 2023                              */s/ Christopher W. Bascom*

                                                 Hugh M. Fain, III (VA Bar No. 26494)
                                                 John M. Erbach (VA Bar No. 76695)
                                                 Christopher W. Bascom (VA Bar No. 87302)

---

[16] Plaintiff's suggestion that a fiduciary duty claim may exist where the fiduciary relationship arises from a contract is based on unpublished, lower-court authority in Virginia, *see* Opp. at 30 (citing *Self Insured Servs. Co. v. Panel Sys., Inc.*, 352 F. Supp. 3d 540, 557-58 (E.D.Va. 2018) (citing *Perry v. Paperboy Ventures, LLC*, 2005 WL 3476772 (Cir. Ct. Va., Fairfax Ct'y, Oct. 28, 2005)), which predates and is plainly inconsistent with the Supreme Court of Virginia's precedential holding that such fiduciary relationships of "special confidence" arising from contract cannot support an independent tort claim, *Aug. Augusta Mut. Ins. Co.*, 645 S.E.2d at 294-295.

[17] *See* Mot. at 7 (citation to ASA at Art. 11.a to state that Plaintiff has access to Anthem's "standard account reporting package" "upon request"); *id.* at 16 (stating "[t]he Complaint does not allege Anthem violated any provision of ERISA Section 724"); *id.* at 20 (citing the Complaint to state that "Plaintiff did not make these demands until 2021").

Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA 23219
Telephone: (804) 697-2040
Fax: (804) 697-2140
hfain@spottsfain.com
jerbach@spottsfain.com
cbascom@spottsfain.com

E. Desmond Hogan (admitted pro hac vice)
Briana L. Black, (admitted pro hac vice)
W. David Maxwell, (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
desmond.hogan@hoganlovells.com
briana.black@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Defendant*
*Anthem Health Plans of Virginia, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on May 15, 2023.

*/s/ Christopher W. Bascom*